335 So.2d 285 (1976)
Steven Henry ROBERTS, Appellant,
v.
STATE of Florida, Appellee.
No. 46468.
Supreme Court of Florida.
July 8, 1976.
*286 Phillip A. Hubbart, Public Defender, and Mark King Leban, Elliot H. Scherker and Bennett H. Brummer, Asst. Public Defenders, for appellant.
Robert L. Shevin, Atty. Gen., and Donald K. Rudser, Asst. Atty. Gen., for appellee.
SUNDBERG, Justice.
This case is before us on appeal from the Circuit Court of the Eleventh Judicial Circuit, in and for Dade County. We have jurisdiction pursuant to Article V, Section 3(b)(1), Florida Constitution, in that the trial court initially and directly passed upon the validity of Section 39.02(5) (c), Florida Statutes.
Appellant, a 15-year-old boy, was tried as an adult and convicted of rape in the Circuit Court in and for Dade County. The trial court sentenced him to a 30-year prison term.
Appellant was arrested on February 22, 1974, and was taken to Youth Hall. On that day, after being advised repeatedly of his Miranda rights, he confessed to having committed the aforementioned offense. On March 21, 1974, he was indicted by a grand jury as an adult pursuant to Section 39.02(5)(c), Florida Statutes, which provides as follows:
"A child of any age charged with a violation of Florida law punishable by death or by life imprisonment shall be subject to the jurisdiction of the court as set out in § 39.06(7) unless and until an indictment on such charge is returned by the grand jury, in which event and at which time the court shall be divested of jurisdiction under this statute and the charge shall be made and the child shall be handled in every respect as if he were an adult. No adjudicatory hearing shall be held within 14 days from the date that the child is taken into custody unless the state attorney advises the court in writing that he does not intend to present the case to the grand jury or that he has presented it to the grand jury but that the grand jury has declined to return an indictment. Should the court receive such a notice from the state attorney, or should the grand jury fail to act within the 14-day period, the court may proceed as otherwise required by law."
*287 Motions for disclosure of grand jury proceedings and to dismiss grand jury indictments predicated on the unconstitutionality of 39.02(4)(c) (sic)[1] were denied by the court.
At trial Roberts pleaded not guilty by reason of insanity. Several expert witnesses testified on the matter of defendant's sanity at the time he committed the rape, and opinion was sharply divided on this issue. Defense counsel requested a jury instruction describing the consequences of a verdict of not guilty by reason of insanity. The trial judge refused to so instruct. In the course of defense counsel's closing argument to the jury, the following colloquy occurred:
"MR. AARON: I ask you to find the defendant not guilty by reason of insanity because that's what the evidence shows, and then, he will be ordered treated in an institution.
"MR. McGUIRK [prosecutor]: Now, I object to that. As a matter of fact we might as well have a sidebar.
"THE COURT: No. Sustained."
At the conclusion of the jury charge, another exchange transpired:
"MR. AARON: May it please the Court, prior to the jury retiring, I am compelled by law to reserve my right to appeal about not giving the instruction about treatment for the defendant in the event he is found not guilty by reason of insanity.
"MR. McGUIRK: I would, therefore, ask that the Court now instruct the jury that the Court has no control over whether the defendant walks free when something like that occurs.
"MR. AARON: That's absolutely incorrect.
"THE COURT: The instructions have been given to the jury. Your objection is noted, and the jury will go into the jury room to deliberate.
"(Thereupon the jury left the courtroom to deliberate their verdict at 4:10 p.m.)"
At a sentencing hearing held October 8, 1974, defense counsel presented to the court extensive testimony dealing with appellant's mental problems. These expert witnesses provided evidence tending to show that Roberts needs psychotherapeutic treatment which cannot be provided in the state prison system. The trial judge disagreed with the contention of appellant's counsel that the court possessed authority to place the defendant on probation and, pursuant to Section 775.082(3)(a),[2] Florida Statutes, sentenced him to the 30-year term noted above.
In seeking reversal of the judgment below, Roberts has on this appeal raised five issues. The constitutional issue which vests jurisdiction in this Court, i.e., validity of 39.02(5)(c), Florida Statutes, has been disposed of by our decision in Johnson v. State, 314 So.2d 573 (Fla. 1975). Of the remaining issues raised by appellee, the only contentions which we find to require discussion are the trial court's refusal to instruct the jury on the consequences in this State of a verdict of not guilty by reason of insanity and its apparent failure to consider probation or other means of sentencing as an alternative to a mandatory sentence of 30 years in prison.
We agree that the failure to instruct on the consequences of a verdict of not guilty by reason of insanity constitutes error and reverse appellant's conviction.
*288 The consequences of such a verdict are described in Rule 3.460, Fla.R.Cr.P.:
"Acquittal for Cause of Insanity
"When a person tried for an offense shall be acquitted by the jury for the cause of insanity, the jury, in giving their verdict of not guilty, shall state that it was given for such cause. If the discharge or going at large of such insane person shall be considered by the court manifestly dangerous to the peace and safety of the people, the court shall order him to be committed to jail or otherwise to be cared for as an insane person and such person shall be held in custody until released by order of the committing court, or may give him into the care of his friends, on their giving satisfactory security for the proper care and protection of such person; otherwise he shall be discharged."
McClure v. State, 104 So.2d 601 (Fla.App. 3rd 1958), held that, while the trial court may instruct the jury as to those consequences, a refusal to do so does not constitute error.
The facts of the instant case provide a compelling argument for modification of the position taken in McClure. The jury was instructed as to the possibility that the defendant might be given probation or parole following a guilty verdict. Yet they must have been left wondering as to the consequences of a verdict of not guilty by reason of insanity. The efforts by counsel for both sides to supply partially accurate information as to those consequences must have served further to confuse the jury. The trial judge should have reduced this confusion by charging the jury in the manner requested by appellant's trial counsel.
But we decline to limit our holding to the facts of this case. In so doing we expressly adopt the so-called "Lyles rule," which is followed in an increasing number of state jurisdictions. In Lyles v. United States, 103 U.S.App.D.C. 22, 254 F.2d 725 (1957), appellant was indicted for robbery, grand larceny and unauthorized use of a motor vehicle, and he relied on a defense of insanity. After dismissal of the grand larceny charge by the prosecution, the jury returned a verdict of guilty on the other two counts. On appeal, the United States Circuit Court of Appeal for the District of Columbia Circuit had to consider the propriety of this charge given by the trial judge:
"If a defendant is found not guilty on the ground of insanity, it then becomes the duty of the Court to commit him to St. Elizabeths Hospital, and this the Court would do. The defendant then would remain at St. Elizabeths Hospital until he is cured and it is deemed safe to release him; and when that time arrives he will be released and will suffer no further consequences from this offense."
In an opinion co-authored by the present Chief Justice of the United States, the Circuit Court of Appeal took the position urged by appellant's counsel in the case at bar:
"This point arises under the doctrine, well established and sound, that the jury has no concern with the consequences of a verdict, either in the sentence, if any, or the nature or extent of it, or in probation. But we think that doctrine does not apply in the problem before us. The issue of insanity having been fairly raised, the jury may return one of three verdicts, guilty, not guilty, or not guilty by reasons of insanity. Jurors, in common with people in general, are aware of the meanings of verdicts of guilty and not guilty. It is common knowledge that a verdict of not guilty means that the prisoner goes free and that a verdict of guilty means that he is subject to such punishment as the court may impose. But a verdict of not guilty by reason of insanity has no such commonly understood meaning... . It means neither *289 freedom nor punishment. It means the accused will be confined in a hospital for the mentally ill until the superintendent of such hospital certifies, and the court is satisfied, that such person has recovered his sanity and will not in the reasonable future be dangerous to himself or others. We think the jury has a right to know the meaning of this possible verdict as accurately as it knows by common knowledge the meaning of the other two possible verdicts."
* * * * * *
"Sometimes a defendant may not want such an instruction given. If that appears affirmatively on the record we would not regard failure to give it as grounds for reversal. Otherwise, whenever hereafter the defense of insanity is fairly raised, the trial judge shall instruct the jury as to the legal meaning of a verdict of not guilty by reason of insanity in accordance with the view expressed in this opinion." (footnote omitted)
The court went on to say that, while the language used by the trial judge in charging the jury on this matter was "not as precise as it might have been in stating the content of the statute," it did not "require or justify" a reversal.
We think the Lyles decision makes eminent good sense and are supported in this view by the appellate courts of other jurisdictions. See, e.g., Commonwealth v. Mutina, ___ Mass. ___, 323 N.E.2d 294 (1975); People v. Cole, 382 Mich. 695, 172 N.W.2d 354 (1969); Kuk v. State, 80 Nev. 291, 392 P.2d 630 (1964). The State argues that to inform the jury of the consequences of its verdict would tend to draw the attention of jurors away from their chief function as triers of fact and would lead to compromised verdicts. This argument loses much of its force when it is realized that Rule 3.390(a), Fla.R.Cr.P., states:
"The presiding judge shall charge the jury only upon the law of the case at the conclusion of argument of counsel, and must include in said charge the penalty fixed by law for the offense for which the accused is then on trial."
But see Johnson v. State, 308 So.2d 38 (Fla. 1975). If letting jurors know the consequences of their guilty verdicts does not lead to an impermissible focus upon the results of their finding rather than on the finding itself, how can it be said that knowledge of the consequences of an acquittal by reason of insanity will have this undesirable effect? As in the instant case, where the trial judge instructed the jury fully on the possible ramifications of a guilty verdict (including probation and parole), the State would like to have it both ways. Calling the consequences of a not guilty-insanity verdict "procedures" rather than a "penalty" (as did the McClure court) does not change the resulting unfairness to the defendant who has fairly raised the insanity defense. Freed from confusion and wonderment as to the possible practical effect of a verdict of not guilty by reason of insanity, jurors will be able to weigh the evidence relating to the factual existence of legal insanity in an atmosphere untroubled by the distracting thought that such a verdict would allow a dangerous psychopath to roam at large.
Since we reverse on the issue of refusal to give the requested instruction, we need not treat in detail the appellant's argument that the trial court's alleged failure to consider probation or other alternative means of sentencing constituted an abuse of its discretion in this area. It is sufficient to note that Section 959.115, Florida Statutes,[3] expressly provides for *290 sentencing alternatives applicable to the instant case. This section, along with the general probation statute,[4] is controlling and so the 30-year prison term for rape established by Section 775.082(3)(a), Florida Statutes, is not a "mandatory minimum" sentence in the sense for which the State contends. If on retrial Roberts is found guilty  a subject about which we express no opinion  the trial court should consider the alternatives posed by Section 959.115 as well as the sentencing provisions of Section 775.082(3)(a) in determining appellant's future.
Accordingly, the judgment of the circuit court is reversed and the case remanded for a new trial at which the court will give the instruction requested by the appellant.
It is so ordered.
ADKINS, BOYD, ENGLAND and HATCHETT, JJ., concur.
OVERTON, C.J., and ROBERTS, J., dissent.
NOTES
[1] In his brief on this appeal counsel for appellant erroneously refers to the statute in question as § 39.02(4)(c).
[2] At time of trial, this subsection was numbered (4)(a); the renumbering was effected by passage of Chapter 74-383, Laws of Florida.
[3] "Probation or commitment of minors by courts other than circuit courts

"(1) A minor found guilty of an offense in a court not exercising juvenile jurisdiction may, as an alternative to other dispositions, be committed to the department for treatment in a youth program outside the correctional system as defined in section 944.02, Florida Statutes, or be placed on probation to the department, if the department is willing and if the offense is a felony or a misdemeanor of the first degree as defined in chapter 775.
"(2) Upon a plea of guilty or a finding of guilt, the court may refer the case to the department for investigation and recommendation as to the amenability of the minor to treatment in its programs.
"(3) In order to utilize this section, the court shall stay and withhold adjudication of guilt and instead shall adjudge the defendant to be delinquent. Such adjudication shall not be deemed a conviction, nor shall it operate to impose any of the civil disabilities ordinarily resulting from a conviction.
"(4) The court shall have the power by order to:
(a) Place the minor on probation to the Department of Health and Rehabilitative Services for an indeterminate period of time until the minor is [*] twenty-one or until sooner discharged by order of the Court.
(b) Commit the minor to the Department of Health and Rehabilitative Services for treatment in a youth program for an indeterminate period of time until the minor is [*] twenty-one or until sooner discharged by the department.
"(5)(a) If a minor proves not to be amenable to treatment under the provisions of subsection (4)(a), the court shall have the power to commit the minor to the department as described in subsection (4)(b).
(b) If a minor proves not to be amenable to treatment under the provisions of subsection (4)(b), the court shall have the power to revoke the adjudication of delinquency, impose the withheld adjudication of guilt, and impose any sentence which it may lawfully impose, giving credit for all time in the department. "[*]Note-Ch. 73-21, Laws of Florida, removed the disability of nonage for persons 18 years of age and older."
[4] Fla. Stat. § 948.01.