394 So.2d 997 (1981)
Thomas KNIGHT, Petitioner,
v.
STATE of Florida, Respondent.
No. 59741.
Supreme Court of Florida.
February 24, 1981.
*998 Jesse J. McCrary, Jr., Miami, Fletcher N. Baldwin, Jr., and Susan Cary, Gainesville, for petitioner.
Jim Smith, Atty. Gen., and Calvin L. Fox, Asst. Atty. Gen., Miami, for respondent.
PER CURIAM.
We have for consideration a petition for writ of habeas corpus by Thomas Knight *999 whose conviction and sentence of death were affirmed by this Court in Knight v. State, 338 So.2d 201 (Fla. 1976). We originally transferred this petition to the Eleventh Judicial Circuit and directed that it be treated as a motion for post-conviction relief. The trial judge in considering the petition properly determined that since petitioner's claim for relief is predicated on the assertion of ineffective assistance of appellate counsel, such relief can only be granted by habeas corpus in the appellate court unless it was caused by an act or omission of the trial court. The ineffective assistance of counsel allegations stem from acts or omissions before this Court, and therefore we have jurisdiction and will consider the petition for habeas corpus on its merits.
The Governor has signed a death warrant for petitioner's execution, which has been set for March 3, 1981. We received a motion for stay of execution and supporting briefs from the petitioner, Knight, as well as the extensive legal arguments contained in the petition for writ of habeas corpus. The state has filed a responding brief, and the Court has heard oral argument in the cause.
In summary, and for the reasons hereafter expressed, we deny the petition for writ of habeas corpus. We find that counsel on the initial appeal for the petitioner was court appointed and his representation was a result of state action. We have considered each of the asserted failures and omissions of this appellate counsel and have determined that the assertions individually and collectively are without merit. We expressly find that none of the asserted failures or omissions establish a serious incompetency that falls measurably below the performance expected of appellate counsel and that these specific asserted failures or omissions did not affect the outcome of the appellate proceedings to the prejudice of the appellant. We reach this conclusion and finding after a review of not only the record on this petition for habeas corpus but also the record on the initial appeal to this Court.

I. Facts in the Instant Case

Because of the issues and circumstances in this proceeding, we restate the facts of this unusual and bizarre abduction and slaying.
On July 17, 1974, at approximately 8:00 a.m., one of the victims, Sydney Gans, left his wife at their home and drove his gold 4-door Mercedes to his business. As he began to get out of his car at his business, he was met by a black male who approached him with an automatic rifle and told him to get back into the car and drive to his residence and get his wife. The black male abductor got into the rear of the car and Mr. Gans drove back to his home and obtained his wife, who got into the front passenger seat. The black male abductor told Mr. Gans that he wanted $50,000. Mr. Gans drove to a bank in downtown Miami, got out of the car and went inside the bank while his wife moved into the driver's seat and began driving the car around the downtown area. Once inside the bank, Mr. Gans advised the president of the circumstances and the demand for $50,000. The president called the Federal Bureau of Investigation, which sent agents to the president's office and coordinated surveillance of the vehicle driven by Mrs. Gans with the City of Miami police department. Officers stationed in the vicinity of the bank, including an agent for the FBI, observed the Gans vehicle stopped at a traffic light and observed the weapon on the lap of the abductor in the rear seat. Mr. Gans received $50,000 in marked funds which were placed in a paper bag. He went outside and was picked up by his wife and the abductor. Surveillance units followed the Gans vehicle but lost it for about four or five minutes. Subsequently, two officers came upon the vehicle in a construction area with the front passenger door open, the right rear passenger door open, and the trunk open. As the officers approached the vehicle, they observed the back of a black male approximately 150 feet from the vehicle who turned and had a rifle-type weapon in his hands. No shots were fired, and the black male turned and ran into a thick growth of scrub trees and *1000 bushes. The body of Mrs. Gans was found behind the steering wheel. The body of Mr. Gans was found lying about 25 feet from the vehicle. It appeared he had been dragged from the vehicle after he had been shot. Both died as a result of gunshot wounds perforating their necks, the fatal shots having apparently been fired from the rear seat of the Gans vehicle. A search of the surrounding area was commenced. Approximately four and a half hours later, the petitioner, Thomas Knight, was apprehended in a high weeded area about 2000 feet from the Gans vehicle. Underneath the petitioner when he was apprehended was an automatic rifle and a paper bag containing $50,000 buried in the dirt.
There were numerous law enforcement eyewitnesses to the events subsequent to Mr. Gans leaving the bank and immediately prior to the victims being killed. Four law enforcement officers positively identified Knight as being the abductor in the Gans vehicle. Knight's fingerprint was on the trunk of the vehicle.
The issue of the petitioner's competency at the time of the offense was presented to the jury. Five expert witnesses testified, four of whom rendered opinions that the petitioner was sane at the time of the offense. The fifth expert witness, presented on the behalf of the petitioner, believed Knight was not sane at the time of the offense and that he had a severe paranoidschizophrenic mental condition.
Four private attorneys were appointed to represent the petitioner at his trial, including a former United States District Attorney and a former Assistant United States District Attorney for the Southern District of Florida. One of the four trial counsel was also the counsel on appeal.

II. Effectiveness of Counsel Standards

The state contends that petitioner's original counsel on appeal was in reality the same as privately retained counsel and that the standard for effective assistance of counsel under these facts, especially in light of this Court's mandatory review in death penalty cases, is not far above the "farce and mockery" test rejected for trial counsel effectiveness in Meeks v. State, 382 So.2d 673 (Fla. 1980). We reject this contention by the state. Counsel who represented the petitioner on appeal was appointed by the trial court immediately following the sentencing. Although the petitioner did ask for the named appellate counsel to be appointed, it should be noted that this counsel was one of four appointed counsel who represented the petitioner at trial. In view of this holding, we need not address in this cause the differences, if any, in standards of competency between appointed and privately retained counsel.
Establishing the appropriate test or standard for determining reasonably effective assistance of counsel has been considered by some a bramble bush thicket. The United States Supreme Court has avoided speaking definitely on this issue. See Maryland v. Marzullo, 435 U.S. 1011, 98 S.Ct. 1885, 56 L.Ed.2d 394 (1978) (White and Rehnquist, JJ., dissenting). Numerous commentators have written recently on this issue.[1] Several courts have found guidance in the American Bar Association Standards for Criminal Justice ch. 4 (2d ed. 1980), relating to the function of defense counsel.[2]
In determining whether defendant has been provided with reasonably effective assistance of counsel, we believe the following four-step process encompassed in United States v. DeCoster (DeCoster III), 624 F.2d 196 (D.C. Cir.1979) (en banc), provides a means to discover a true miscarriage of *1001 justice and yet does not place the judiciary in the role of interfering with defense counsel's legal and tactical conduct at trial or on appeal. We adopt the following four principles as a standard to determine whether an attorney has provided reasonably effective assistance of counsel to his client.
First, the specific omission or overt act upon which the claim of ineffective assistance of counsel is based must be detailed in the appropriate pleading.
Second, the defendant has the burden to show that this specific omission or overt act was a substantial and serious deficiency measurably below that of competent counsel. As was explained by Judge Leventhal in DeCoster III: "To be `below average' is not enough, for that is self evidently the case half the time. The standard of shortfall is necessarily subjective, but it cannot be established merely by showing that counsel's acts or omissions deviated from a checklist of standards." 624 F.2d at 215. We recognize that in applying this standard, death penalty cases are different, and consequently the performance of counsel must be judged in light of these circumstances.
Third, the defendant has the burden to show that this specific, serious deficiency, when considered under the circumstances of the individual case, was substantial enough to demonstrate a prejudice to the defendant to the extent that there is a likelihood that the deficient conduct affected the outcome of the court proceedings. In the case of appellate counsel, this means the deficiency must concern an issue which is error affecting the outcome, not simply harmless error. This requirement that a defendant has the burden to show prejudice is the rule in the majority of other jurisdictions.[3]
Fourth, in the event a defendant does show a substantial deficiency and presents a prima facie showing of prejudice, the state still has an opportunity to rebut these assertions by showing beyond a reasonable doubt that there was no prejudice in fact. This opportunity to rebut applies even if a constitutional violation has been established. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); DeCoster III.

III. Habeas Corpus Disposition

The petition for habeas corpus asserts that the briefs submitted to this Court on appeal were poorly written and failed to properly present the necessary legal issues to provide a fair review of petitioner's trial. The briefs by counsel on the initial appeal, while not a model of legal writing, did set forth 23 asserted points of error. In our opinion, reported at 338 So.2d 201, we expressly discussed issues concerning the partiality of a juror, the pervasiveness of the pretrial publicity, the denial of a change of venue, the admission of certain evidence as being part of the res gestae, the authority to prosecute upon felony murder when the indictment charged premeditated murder, and the appropriateness of the death sentence. Poor writing style is not a ground for relief.
The petitioner sets forth four legal errors which he contends his appellate counsel should have presented to this Court on appeal, arguing that the failure to present those issues to the Court resulted in his being denied reasonably effective assistance of counsel. The asserted legal errors concern: *1002 (1) the trial court's failure to instruct the jury on elements of the underlying felony; (2) the trial court's failure to instruct the jury on the result of a verdict of not guilty by reason of insanity; (3) the trial court's exclusion of the witness Pat Duval from testifying in the cause; (4) the trial court's application of the statutory aggravating and mitigating circumstances and its failure to find any mitigating circumstances.
We will address these points individually and apply the standards adopted in Part II to determine whether counsel for this petitioner provided reasonably effective assistance in the initial appeal.
The first issue concerns the trial judge's failure to instruct the jury on the elements of the underlying felony. The petitioner contends that our decision in Robles v. State, 188 So.2d 789 (Fla. 1966), is determinative and that a trial court's failure to give an adequate instruction on the underlying felony is a fatal error even when such instruction has not been requested by the defendant. Subsequent to our opinion on the initial appeal in this cause, we decided State v. Jones, 377 So.2d 1163 (Fla. 1979), which reaffirmed our decision in Robles v. State.
The record in the instant case reflects that the trial judge gave the general definitive instructions for homicide but did not specifically instruct upon the elements of the underlying felony of kidnapping or robbery. There was no request or objection by petitioner's trial counsel to this failure to give these instructions.
It is clear that in both Robles and Jones the primary charge was felony murder and the state in neither case contended the evidence was sufficient to establish premeditated murder. We expressly noted in Jones that there was no contention that there was sufficient evidence to establish premeditated murder. We conclude that where there is sufficient evidence of premeditation, the failure to give the underlying felony instruction, where it has not been requested, is not error which mandates a reversal absent a showing of prejudice. See Frazier v. State, 107 So.2d 16 (Fla. 1958).
We find the failure of appellate counsel, who was also trial counsel, to raise this issue is not an omission that was a serious deficiency, and we further find that no prejudice was shown. In fact, an argument could be made under the facts of this case that giving the underlying felony instruction would have been more of a detriment than a benefit to this petitioner. This stems from the fact that one of the arguments of the petitioner at trial was the lack of direct evidence that Knight actually killed the victims. Indeed, the record reflects that there was strong circumstantial evidence but no direct eyewitness evidence of the actual killings, in contrast to the considerable direct evidence, including numerous law enforcement eyewitnesses, that Knight was the perpetrator of the kidnapping and robbery.
However, the record in this cause, and in particular the final argument of counsel, demonstrates that the state, although it mentioned felony murder, strongly argued premeditated murder to the jury. The record reflects that there is not only sufficient but overwhelming evidence of premeditated murder. We find that under the circumstances of this case and our review of the record that neither Robles nor Jones applies, but Frazier does apply. We are satisfied beyond a reasonable doubt that the failure to give the instruction at issue was not prejudicial and did not contribute to the petitioner's conviction. See Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).
The second identified failure of appellate counsel is the assertion that he should have anticipated this Court's ruling in Roberts v. State, 335 So.2d 285 (Fla. 1976), and requested an instruction on the consequences of the verdict of not guilty by reason of insanity. Our decision in Roberts was decided subsequent to trial, briefs and oral argument in this cause. In Roberts there was a specific request at the trial court level for the instruction, and we *1003 adopted the rule of law expressed in Lyles v. United States, 254 F.2d 725 (D.C. Cir.1957), cert. denied, 356 U.S. 961, 78 S.Ct. 997, 2 L.Ed.2d 1067 (1958), cert. denied, 362 U.S. 943, 80 S.Ct. 809, 4 L.Ed.2d 771 (1960), cert. denied, 368 U.S. 992, 82 S.Ct. 610, 7 L.Ed.2d 529 (1962). Clearly, our Roberts decision did not adopt a rule of law dictated by the United States Supreme Court, the United States constitution, or the Florida constitution, nor did it apply retroactively to any pending decisions except those in which that issue had been preserved and which were actually pending on appeal. Petitioner's counsel in oral argument recognized the well established rule of law that there is no requirement that counsel, to be reasonably effective, must anticipate changes in the law. See Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970). There clearly was no substantial deficiency by appellate counsel and no prejudice stemming from the failure to raise this issue.
The third asserted omission by appellate counsel concerns his failure to raise as error the exclusion of testimony by witness Pat Duval. The testimony of this witness was proffered at trial to show the jury that, given the family history of abuse and incest by the father of the petitioner, the feelings professed by the petitioner to the expert witnesses about his father were in fact "inappropriate." The proposed witness Duval was not an expert witness and our review of the record reveals that the ruling of the trial judge was clearly within his discretion and was proper under the circumstances of this case. The failure to raise this issue on appeal was not a substantial deficiency by appellate counsel, and there was no prejudice.
The fourth asserted omission of appellate counsel concerns his failure to argue an improper doubling of the aggravating circumstances and of failure to properly present mitigating circumstances for reevaluation by this Court. The record does reflect that the trial judge doubled up certain listed aggravating circumstances but that in and of itself is not error. See Hargrave v. State, 366 So.2d 1 (Fla. 1978); Washington v. State, 362 So.2d 658 (Fla. 1978); Elledge v. State, 346 So.2d 998 (Fla. 1977). What is important is that the aggravating circumstances considered by the trial judge were in fact statutory aggravating circumstances. The full sentencing order is set forth in the original opinion and reflects full and considered judgment by the trial judge and this Court of all the aggravating and mitigating circumstances. The trial judge specifically addressed and evaluated the mental condition of the petitioner as it should be applied under section 921.141(6)(b), (f), Florida Statutes (1973). He had heard the testimony of five experts concerning the mental condition of the petitioner and determined that it should not be considered a mitigating factor.
Our decision in Provence v. State, 337 So.2d 783 (Fla. 1976), upon which the petitioner principally relies, does not control because there were no mitigating circumstances. See Elledge v. State. Provence was decided in July of 1976, seven months after the initial brief was filed on the appeal and three months after oral argument. Under the circumstances, we find there was no substantial deficiency in appellate counsel for failure to present this issue to the Court and no demonstrated prejudice to the petitioner.
We have carefully reviewed the petition, the record in this cause, and the record in the original cause concerning the asserted issues to make our findings in this proceeding. We are very mindful that this is a death case, that an execution warrant has been signed, and that our findings from these records must now be presumed correct by any federal court that reviews these proceedings, absent certain factors enumerated in 28 U.S.C. § 2254 (d) (1976). See Sumner v. Mata, ___ U.S. ___, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981).
We conclude the record is clear that there was no substantial deficiency in the petitioner's representation on appeal by which the petitioner was prejudiced. The petition for habeas corpus is denied, as is the stay of execution of sentence.
*1004 No petition for rehearing will be entertained.
It is so ordered.
ADKINS, BOYD, OVERTON, ALDERMAN and McDONALD, JJ., concur.
SUNDBERG, C.J., concurs in result only.
ENGLAND, J., did not participate in the consideration of this case.
NOTES
[1] See, e.g., Erickson, Standards of Competency for Defense Counsel in a Criminal Case, 17 Am.Crim.L.Rev. 233 (1979); Gard, Ineffective Assistance of Counsel  Standards and Remedies, 41 Mo.L.Rev. 483 (1976).
[2] See, e.g., Taylor v. State, 291 Ala. 756, 287 So.2d 901 (1973), cert. denied, 416 U.S. 945, 94 S.Ct. 1955, 40 L.Ed.2d 298 (1974); People v. Pope, 23 Cal.3d 412, 152 Cal. Rptr. 732, 590 P.2d 859 (1979); State v. Tucker, 97 Idaho 4, 539 P.2d 556 (1975); State v. Hester, 45 Ohio 2d 71, 341 N.E.2d 304 (1976); Baxter v. Rose, 523 S.W.2d 930 (Tenn. 1975); State v. Harper, 57 Wis.2d 543, 205 N.W.2d 1 (1973). See generally Erickson, supra note 1.
[3] At least five circuit courts of appeals have indicated general agreement. See Davis v. Alabama, 596 F.2d 1214 (5th Cir.1979), vacated as moot, 446 U.S. 903, 100 S.Ct. 1827, 64 L.Ed.2d 256 (1980), on remand 623 F.2d 366 (5th Cir.1980); Cooper v. Fitzharris, 586 F.2d 1325, 1331-32 (9th Cir.1978) (en banc), cert. denied, 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 793 (1979); United States v. Cooper, 580 F.2d 259, 263 n. 8 (7th Cir.1978); Harshaw v. United States, 542 F.2d 455, 456-57 (8th Cir.1976); United States ex rel. Green v. Rundle, 434 F.2d 1112, 1115-16 (3d Cir.1970). Contra, Beasley v. United States, 491 F.2d 687, 696 (6th Cir.1974); but see United States v. Sumlin, 567 F.2d 684, 689 (6th Cir.1977), cert. denied, 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1978). See also Coles v. Peyton, 389 F.2d 224, 226 (4th Cir.) (placing burden on government to show lack of prejudice), cert. denied, 393 U.S. 849, 89 S.Ct. 80, 21 L.Ed.2d 120 (1968). At least sixteen states have indicated agreement with the majority federal rule. See Erickson, supra note 1, at 249 n. 137.