PER CURIAM.
This is a tragic case in which the grandmother of an infant grandchild was convicted of first degree murder of said infant and sentenced to life in prison with a minimum mandatory service of 25 years, pursuant to Sec. 775.082(1) of Florida Statutes (1981).
An appeal was taken from the adjudication on the verdict of guilt, contending that the evidence was insufficient. Pending the appeal, a 3.850 motion was filed and a request was made to relinquish jurisdiction to permit the trial court to consider same, which was granted. The principal thrust of this petition was the ineffectiveness of trial counsel and in particular his failure to properly advise the defendant to take a proposed reduction in the charge by the state to manslaughter in exchange for a plea of guilty and the consequent reduction in possible sentence upon such a conviction. The trial court, after extensive hearings, entered an order denying' this petition and an appeal was taken from this denial.[1]
*777 These appeals were consolidated and on the appeal in chief, from the conviction, we affirm. The evidence was conflicting, but the jury resolved the conflicts and there is substantial, competent evidence to support the verdict. Clark v. State, 879 So.2d 97 (Fla.1980); Knight v. State, 392 So.2d 337 (Fla.3d DCA 1981); Abbott v. State, 334 So.2d 642 (Fla.3d DCA 1976); Fernandez v. State, 328 So.2d 508 (Fla.3d DCA 1976).
On the appeal from the denial of the 3.850 motion, the record indicates that the appellant and her family are Cuban refugees who speak little English, that the defense counsel spoke no Spanish, that the events surrounding the tendered reduction to manslaughter and its penalty contrasted with the mandatory minimum penalty for a conviction of first degree murder were communicated, with some difficulty, to the appellant and her family. The appellant elected not to agree to any jail time on a reduced charge and to submit the matter to the jury with no request for lesser included charges. The appellant gambled on the jury not finding her guilty of first degree murder and lost. No error has been made to appear in the denial of the 3.850 motion and the order under review in this regard is affirmed. Foster v. State, 400 So.2d 1 (Fla. 1981); Alvord v. State, 396 So.2d 184 (Fla. 1981).
The remaining points raised in this appeal are found to be without merit. Therefore, the appeals from the conviction and sentence and denial of the motion to vacate pursuant to Rule 3.850 Fla.R.Crim.P. are hereby affirmed.
Affirmed.

.The order denying the 3.850 motion reads as follows:
“The matter came on for hearing on defendant’s Motion for Relief pursuant to FRCrP. 3.850. The Court granted defendant’s request for an evidentiary hearing on one of the grounds set forth in her motion, namely, that defendant was denied effective assistance of counsel in that trial counsel failed to “insure that his client completely understood her pleading alternatives.” 1
Hearings were held on December 4, 12, and 22, 1981. Testifying for the defendant were David Jaffe (defense trial counsel), Celia Abella (defendant’s daughter-in-law), Manases Abella (Defendant’s husband), Maria Teresa Servilla (defendant’s daughter) and the defendant, Irene Abella. The State called as witnesses Dr. Ab-dullah Fatteh (a forensic pathologist retained by counsel for Adella Abella, originally a co-defendant and then a State witness), Ken Marvin (an attorney associated with Jaffe), David Waksman (the trial prosecutor), Alan Karten (an attorney associated with Jaffe) and, by deposition, David Miller (attorney for co-defendant Adella Abella).
FINDINGS OF FACT
1. Defendant, Irene Abella, was charged with first degree murder for the death of her infant grandchild, suffocated at birth. She was found guilty by a jury of 12 persons, and was convicted and sentenced by the Court to the mandatory sentence of life imprisonment without parole for 25 years.2
2. Approximately one month prior to trial, the prosecuting attorney offered to reduce the charges to manslaughter in exchange for a guilty plea from defendant. This offer was communicated by defense counsel to his client shortly thereafter.
3. At that time, Jaffe communicated with his client through the use of an interpreter, one of the defendant’s relatives, as he spoke no Spanish and defendant understood and spoke little English.
4. In several pre-trial conferences, Jaffe explained the mandatory penalty for first degree murder and the penalties for lesser included crimes. He specifically advised defendant that if she were convicted of manslaughter she could be sentenced to up to fifteen years in prison.
5. The testimony of Jaffe on this point is confirmed not only by his associate, Karten, but, in essence, by defendant’s daughter-in-law, Celia Abella. She recalled that Jaffe explained the penalty for manslaughter as 11 months to 15 years. Apparently Celia recalled Jaffe’s explanation of the parole guidelines which prescribed a minimum of eleven months incarceration on a fifteen year sentence for manslaughter.
6. After the initial plea offer by Waksman, Jaffe suggested that a limit or cap be set on the sentence either by the State or the Court. Waksman refused to do so and further refused to approach the Court for this purpose.
7. However, at Jaffe’s urging, Waksman agreed to a conference with the Court shortly after jury selection began.2
8. Although the Court did not agree to a specific sentence for a plea to manslaughter, the Court indicated its view that the defendant was not a typical criminal and that no “significantly long period of incarceration” would be appropriate.
9. Immediately following the chambers conference, Jaffe consulted with the defendant and her husband in the hallway. Jaffe spoke through an interpreter, defendant’s daughter, and explained in substance what had been discussed in chambers.
10. Jaffe explained the alternatives to the defendant, did not recommend either that she plead guilty or go to trial, said he thought she had a good chance if she went to trial, but that the jury could believe the testimony of her *776 daughter. The defendant did not know what to do and the defendant’s husband encouraged her to take the stand and tell the jury she was innocent.
11. The defendant admitted that in response to Jaffe’s remarks she stated she was not guilty and therefore would not plead guilty.
12. The Court specifically finds that Jaffe correctly explained the possible penalties for manslaughter although both defendant and her husband testified they understood the penalty to be from 5 to 15 years. Jaffe’s testimony is corroborated by Karten and by defendant’s daughter, Maria Teresa, who testified that her father, immediately after the hall conference, explained the penalty for manslaughter as “up to 15 years.”
13. The defendant, herself, testified she did not want to go to jail for even one day and that she told Jaffe she would die if she ever had to serve 10 to 15 years.
CONCLUSIONS OF LAW
The defendant has failed to prove by clear and convincing evidence that Jaffe’s conduct fell below the constitutionally required minimum level of competency. Considered not from hindsight, but based on the circumstances at the time, Jaffe did render reasonably effective assistance of counsel. See Meeks v. State, 382 So.2d 673, 675 (Fla.1980). The defendant did not show that Jaffe failed to advise her of the State’s plea offer or failed to explain the possible consequences attendant upon her decision to plead guilty or go to trial. Compare, Lyles v. State, 178 Ind.App. 398, 382 N.E.2d 991 (1978); Caruso v. Zelinsky, 515 F.Supp. 676 (D.N.J.1981) (remanded to trial court for evidentiary hearing on whether trial counsel failed to communicate plea offer to defendant).
Although trial counsel did not follow the suggested standard in the Code of Professional Responsibility and advise his client whether it appeared desirable for her to plead guilty,4 the Court is aware of no rule requiring that such advice be given. Moreover, even had counsel advised defendant to go to trial because in his considered judgment there was a good chance of acquittal, such conduct would fall within the accepted norm of reasonable representation.®
Even were Jaffe’s actions held to be measurable below those of competent counsel, the defendant would additionally have to show that the deficient conduct affected the outcome of the Court Proceedings. Knight v. State, 394 So.2d 997 (Fla.1981). Defendant has failed to either allege or prove that had she been fully aware of all that was said at the chambers conference, she would have entered a plea of guilty to manslaughter. On the contrary, defendant’s own statements at the hearing indicate she was never willing to opt for any incarceration — however slight or certain — as opposed to taking a chance on acquittal and total freedom.6 Even defendant’s requested remedy, “a new trial,” belies her willingness to enter a plea to manslaughter with the possibility of receiving a 15 year sentence.?
Therefore, it is ordered and adjudged that defendant’s motion to Vacate Judgment and Sentence is hereby DENIED.”
1 The Court denied defendant’s motion on all other grounds raised in her 3.850 motion without a hearing on the basis that defendant failed to set forth any other valid ground for collateral attack of her conviction.
It should be noted that in the course of the evidentiary hearing, there was testimony adduced which relates to an alternative theory of defendant’s motion, i.e. trial counsel’s alleged failure to consult an independent pathologist. However, this testimony was permitted only in so far as it was relevant to the primary issue under consideration.
2 The State did not seek the death penalty.
3 A complete transcript of the chambers conference is an exhibit in these proceedings.
4 The Code of Professional Responsibility’s Ethical Considerations EC 7-7 provides in pertinent part:
EC 7-7. In certain areas of legal representation not affecting the merits of the cause or substantially prejudicing the rights of a client, a lawyer is entitled to make decisions on his own. But otherwise the authority to make decisions is exclusively that of the client and, if made within the framework of the law, such decisions are binding on his lawyer. * * * A defense lawyer in a criminal case has the duty to advise his client fully on whether a particular plea to a charge appears to be desirable and as to the prospects of success on appeal, but it is for the client to decide what plea should be entered and whether an appeal should be taken.
The Preliminary Statement to this code provides that “The Ethical Considerations are aspirational in character and represent the objectives toward which every member of the profession should strive.”
5 It is this act of hubris on the part of trial counsel which all too often brings disasterous results for a defendant. Our assumption that counsel can be objective in assessing the likely results of a trial does not take into account the nature of a trial lawyer’s ego and the limited damage a conviction does to him in comparison with the dire consequences for the defendant.
6 Although a defendant’s self-serving after-the-fact statement that she would have pleaded guilty, would not be conclusive on the issue of prejudice, certainly Abella’s failure to so testify is persuasive on the issue of non-prejudice.
7 If defendant were successful in her 3.850 Motion on the ground that her lawyer failed to adequately advise her of the plea alternatives, the proper remedy would not be the granting of a new trial, but the enforcement of the original plea bargain, assuming it to be enforceable, See Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).