453 So.2d 1102 (1984)
Ernest Charles DOWNS, Appellant,
v.
STATE of Florida, Appellee.
No. 64184.
Supreme Court of Florida.
June 21, 1984.
Rehearing Denied August 28, 1984.
*1103 Elizabeth L. White of the Law Offices of William J. Sheppard, Jacksonville, and Maurice N. Nessen, Michael H. Barr and Leslie Nicholson of Kramer, Levin, Nessen, Kamin & Frankel, New York City, for appellant.
Jim Smith, Atty. Gen. and Raymond I. Marky, Asst. Atty. Gen., Tallahassee, for appellee.
ALDERMAN, Chief Justice.
Ernest Downs appeals the order of the trial court denying his motions to vacate his convictions and sentences. We affirm the order of the trial court and, among other things, hold that Downs was not denied effective assistance of counsel at either the guilt or penalty phase of his trial.
Downs had been approached by Barfield with an offer of five thousand dollars to kill Harris. He accepted the offer and, with the assistance of Johnson, killed Harris. Downs was convicted of first-degree murder and of conspiracy to commit first-degree murder. After a jury recommendation that the death sentence be imposed, Downs was sentenced to death for murder and thirty years for the conspiracy. Upon appeal, finding no reversible error, we affirmed his convictions and sentences. Downs v. State, 386 So.2d 788 (Fla.), cert. denied, 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 238 (1980).
Subsequently, Downs filed two motions under Florida Rule of Criminal Procedure 3.850 to vacate his convictions and sentences. After evidentiary hearings, the trial court denied these motions and in its order dealt with each of the points raised by Downs.
On appeal from that order, Downs now argues that a statement made by the prosecutor to the trial judge at sentencing tainted the sentencing process; that sentencing him to death violates the rule for proportionality of sentences; that he should get a new sentencing hearing because the prosecutor informed the jury that Barfield was going to trial for first-degree murder; that he should not have been sentenced to death because the manner in which immunity was awarded to Johnson cast a shadow on the reliability of Johnson's testimony; that his death sentence should be vacated because of erroneous jury instructions on aggravating and mitigating factors; that the trial court erred in denying him reasonable expenses to employ experts to prove that the death penalty is being imposed unconstitutionally in Florida; that the jury that convicted him was not fair and impartial and was "death qualified" under Witherspoon standards; and that his statement implicating him in the murder was not voluntary and that there was insufficient evidence upon which to convict him. We will not consider these issues because they were or *1104 could have been raised on direct appeal and are not proper grounds for post-conviction collateral proceedings.
Downs raises several other points which are appropriate grounds for collateral attack. He argues that he was denied effective assistance of counsel at the guilt and penalty phases of his trial; that the contingent fee contract between him and his defense counsel created a conflict of interest which violated his right to effective assistance of counsel; and that his sentence should be vacated because his counsel was privately reprimanded by the Bar for conduct in this case. Downs also alleges several Brady[1] violations. Finally, he maintains that he is entitled to a de novo post-conviction hearing before a new judge because the present trial judge was biased against him. We find no merit to any of these claims and hold that the trial court ruled correctly.
Downs' claims of ineffective assistance of counsel at the guilt and penalty phases of his trial, including his assertion of conflict of interest caused by the contingent fee contract, are the only issues that warrant further discussion.
Downs argues that his trial counsel did not provide him reasonably effective assistance of counsel at the penalty phase of his trial because counsel did not adequately "humanize" him, did not present vital details, and did not offer answers to the prosecution's charges of aggravating circumstances although counsel had available much information relating to Downs' background which he could have employed. He argues that he was denied effective assistance of counsel at the guilt phase of his trial because his counsel made only a meager or misdirected pretrial investigation that focused on an unreal theory for a defense and failed to present available evidence. He argues that he is entitled to a new trial because there is a likelihood that the failure of his trial counsel to present a good defense affected the outcome of his case. He points to the testimony of his expert that no competent counsel would have acted in this manner in a death case.
The state responds that Downs is quarreling with the tactical decisions of counsel and that the decision as to what evidence to present to "humanize" Downs was a tactical decision made by his counsel; that counsel, in fact, did present evidence on Downs' behalf at the penalty phase; and that he could have presented additional evidence but did not because in his judgment much of this evidence was negative and would hurt Downs' chances before the jury. The state further asserts that trial counsel introduced evidence to disprove the factor that the homicide was heinous, atrocious, or cruel; introduced evidence to weaken other aggravating circumstances; and introduced evidence of mitigating factors. The state also argues that counsel conducted a reasonable investigation and that his failure to present the withdrawal and alibi defenses was a matter of trial strategy and that the opinions of Downs' expert were not compelling because he did not review the pretrial depositions or pretrial work of trial counsel and did not fully consider why trial counsel took certain actions in the course of the trial.
At the time the trial court denied Downs' motions to vacate based on claims of ineffective assistance of counsel, our decision in Knight v. State, 394 So.2d 997 (Fla. 1981), established the test to be applied in evaluating the merits of claims of ineffective assistance of counsel. In Knight, we adopted a four-step analysis to determine whether a defendant has been provided reasonably effective counsel. We announced that our test, adopted from United States v. Decoster, 624 F.2d 196 (D.C. Cir.1976), "provides a means to discover a true miscarriage of justice and yet does not place the judiciary in the role of interfering with defense counsel's legal and tactical conduct at trial or on appeal." Knight v. State, 394 So.2d at 1000-01. Knight requires that the defendant, in an appropriate pleading, identify the specific omission or overt act upon which the claim of ineffective *1105 assistance of counsel is based; that the defendant show that the specific omission or act was a substantial and serious deficiency measurably below that of competent counsel; that the defendant show that the deficiency, under the circumstances, was so substantial as to probably have affected the outcome of the proceedings; and that, if these three factors are established, the state still has the opportunity to rebut the claim of ineffective assistance by showing beyond a reasonable doubt that there was no prejudice.
The trial court correctly determined that Downs has failed to establish that trial counsel was ineffective at either the guilt or penalty proceedings and that the record and evidence reflect that trial counsel conducted a reasonable pretrial investigation and that his decisions now being challenged were strategic trial matters.
In support of its conclusions, the trial court found:
The evidence before this Court is that trial counsel was aware of and explored all possible  and probable  defenses with the Defendant prior to and during the trial. The attorney participated in over thirty (30) depositions or sworn statements of witnesses, filed discovery and other pre-trial Motions, obtained costs for employment of a private investigator and employed such an investigator to explore possible defenses, reviewed depositions taken by other attorneys of co-defendants, conducted legal research and talked with other attorneys representing co-defendants.
After a review of all the evidence, the claims that counsel was ineffective because he did not offer proof of an alibi or other defense are not supported by the evidence.
On the issue of alibi, the first mention of this important matter by the grandmother of the Defendant to the attorney was in late October 1977. At a sworn deposition taken December 6, 1977, the grandmother denied knowing where the Defendant was at the time of the murder. On December 5, 1977, Sharon Darlene Perry, a sister of the Defendant, was deposed. She testified that she did not have information where the Defendant was and that no one told her where he was.
The attorney had talked with these witnesses in August 1977. There was no mention of alibi by the relatives nor the Defendant until shortly before trial and then this was specifically denied by the grandmother at time of her deposition in 1977.
On the issue of not putting the Defendant on the stand or presenting a defense of "withdrawal," it appears clear that this was a strategic decision of counsel. The "withdrawal" defense as raised by present counsel appears tenuous and legally insufficient.
On the issue of presenting other witnesses for defense, trial counsel did attempt at the time of trial to offer proof that other persons had a motive to kill the deceased. This evidence was proffered to the Court and ruled inadmissible. This was reviewed at the time of appeal. The fact that family members were not presented as to the life history and good character of the Defendant in consideration of the State's evidence at trial and the right to two arguments to the jury by defense appears strictly a judgment call.
Defense counsel did present the testimony of family members and the Defendant at the penalty phase. Defendant's evidence at this proceeding was not restricted to the statutory matters but he was allowed to present what he wanted in mitigation.
The State objected to the testimony of Stephen Bernstein offered as an expert in capital cases. The Court found Mr. Bernstein qualified as an expert in this area but reserved ruling as to the weight of his testimony. The Court finds that Mr. Bernstein is qualified by his experience and training to testify as to his opinion. The weight to be given his testimony is lessened by several factors. One, Mr. Bernstein did not review the *1106 depositions or pre-trial work of trial counsel. Second, the manner of defending capital cases has markedly changed since December 1977 to this date. Many of the matters he assumed effective counsel would do simply was not normal nor standard procedure in 1977. The barrage of pre-trial defense motions had not yet been implemented in capital cases. Third, Mr. Bernstein had not fully considered the reasons why counsel took certain actions in the course of the trial by either talking with counsel or reviewing all of his testimony before this Court.
It has been difficult in reviewing this record in distinguishing fact from allegation. This Court has attempted to consider all claims in light of the evidence and testimony presented at the hearings and the Court record.
It is of interest that as of October 21, 1977, the Defendant made no mention of alibi at the time he executed a sworn statement for his attorney as to what happened in this case. As late as January 31, 1980, the Defendant alleged his defense to rest on the testimony of Edward Peters. At this hearing, the Defendant never mentioned such a defense.
These findings are supported by the record.
If we were to apply the Knight criteria in this case, we would find that Downs has failed to show that the alleged omissions or overt acts of his defense counsel constituted a substantial and serious deficiency measurably below the standard of competent counsel.
Since the filing of this appeal, the Supreme Court of the United States has rendered its decision in Strickland v. Washington, ___ U.S. ___, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), outlining the standards to be used in deciding whether a defendant was denied his sixth amendment right to effective assistance of counsel.
In Washington v. State, 397 So.2d 285 (Fla. 1981), applying Knight, we affirmed the trial court's denial of Washington's motion for post-conviction relief and expressly stated:
[O]n the claims of ineffective counsel, the appellant has failed under the Knight criteria to make a prima facie showing of substantial deficiency or possible prejudice and has failed to such degree that we believe, to the point of a moral certainty, that he is entitled to no relief under rule 3.850.
397 So.2d at 287. Washington then sought relief in the United States District Court for the Southern District of Florida. That court, after an evidentiary hearing, denied his petition for writ of habeas corpus. Washington then appealed to the United States Circuit Court of Appeals for the Eleventh Circuit. That court reversed the district court, developed its own criteria for analyzing ineffective assistance claims, and remanded the case for a new factfinding hearing. Washington v. Strickland, 693 F.2d 1243 (5th Cir. Unit B 1982). The state then sought review before the Supreme Court of the United States. The Supreme Court reversed the Eleventh Circuit, rejected its criteria for evaluating ineffectiveness of counsel claims, established the standards of an ineffectiveness inquiry, applied these standards, and held that the federal district court had properly denied habeas corpus.
The Supreme Court began its analysis with the explanation that the sixth amendment right to counsel exists in order to ensure the fundamental right to a fair trial, i.e., a trial "in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding." 104 S.Ct. at 2063. The benchmark for judging claims of ineffectiveness, the Supreme Court held, is whether the conduct of counsel "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 2064. In order for a defendant to succeed on a claim of ineffectiveness of counsel so as to obtain a reversal of a conviction or death sentence, the Supreme Court held that he must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. The measure of an *1107 attorney's performance, the Court stated, is reasonableness under prevailing professional norms, reasonableness considering all the circumstances. In this regard the Supreme Court explained:
No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. See United States v. Decoster, 624 F.2d, at 208. Indeed, the existence of detailed guidelines for representation could distract counsel from the overriding mission of vigorous advocacy of the defendant's cause. Moreover, the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation, although that is a goal of considerable importance to the legal system. The purpose is simply to ensure that criminal defendants receive a fair trial.
Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf. Engle v. Isaac, 456 U.S. 107, 133-134 [102 S.Ct. 1558, 1574-1575, 71 L.Ed.2d 783] (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." See Michel v. New York, supra, [350 U.S. 91], at 101 [76 S.Ct. 158, at 164, 100 L.Ed. 83]. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. See Goodpaster, The Trial for Life: Effective Assistance of Counsel in Death Penalty Cases, 58 N.Y.U.L. Rev. 299, 343 (1983).
The availability of intrusive post-trial inquiry into attorney performance or of detailed guidelines for its evaluation would encourage the proliferation of ineffectiveness challenges. Criminal trials resolved unfavorably to the defendant would increasingly come to be followed by a second trial, this one of counsel's unsuccessful defense. Counsel's performance and even willingness to serve could be adversely affected. Intensive scrutiny of counsel and rigid requirements for acceptable assistance could dampen the ardor and impair the independence of defense counsel, discourage the acceptance of assigned cases, and undermine the trust between attorney and client.
Id. at 2065-66.
We agree with the Supreme Court's analysis. In Florida, there has been a recent proliferation of ineffectiveness of counsel challenges. Criminal trials resolved unfavorably to the defendant have increasingly come to be followed by a second trial of counsel's unsuccessful defense. Although courts have found most of these challenges to be without merit, defense counsel, in many of the cases, have been unjustly subjected to unfounded attacks upon their professional competence. A claim of ineffective assistance of counsel is extraordinary and should be made only when the facts warrant it. It is not a claim that is appropriate in every case. It should be the exception rather than the rule.
*1108 The Supreme Court emphasized that in judging ineffectiveness claims, a court must judge the reasonableness of challenged conduct of counsel on the facts of the particular case viewed as of the time of counsel's conduct. It stated:
A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case.
Id. at 2066. The Supreme Court further emphasized that counsel is strongly presumed to have rendered adequate assistance and to have made all significant decisions in the exercise of reasonable professional judgment. Strategic choices after thorough investigation of the law and facts are virtually unchallengeable, and a particular decision not to investigate is to be assessed for reasonableness considering all the circumstances and applying a "heavy measure of deference to counsel's judgments." Id.
Furthermore, the Supreme Court held, even if defendant can demonstrate that counsel's performance was deficient under these guidelines, this will not warrant setting aside the judgment of a criminal proceeding if counsel's errors had no effect on the judgment. In order to constitute ineffective assistance under the constitution, counsel's deficiencies in performance must be prejudicial to the defendant. Defendant must affirmatively prove prejudice. The Supreme Court explained:
Attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. They cannot be classified according to likelihood of causing prejudice. Nor can they be defined with sufficient precision to inform defense attorneys correctly just what conduct to avoid. Representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another. Even if a defendant shows that particular errors of counsel were unreasonable, therefore, the defendant must show that they actually had an adverse effect on the defense.
It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.
Id. at 2067.
The appropriate test for prejudice, the Supreme Court concluded, is:
The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
... .
... When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt. When a defendant challenges a death sentence such as the one at issue in this case, the question is whether there is a reasonable probability that, absent the errors, the sentencer  including an appellate court, to the extent it independently reweighs the evidence  would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.
In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury.
Id. at 2068-69. In deciding whether defendant has proved prejudice, a court should presume that the judge or jury acted according to the law. The concern of the court evaluating an ineffectiveness claim should be whether the result of a *1109 particular proceeding is unreliable because of a breakdown in the adversarial process.
Importantly, the Supreme Court held that to the extent this has been the guiding inquiry in the lower courts, the standards articulated today do not require reconsideration of ineffectiveness claims rejected under different standards.[2] It further directed that courts should strive to ensure that claims of ineffectiveness not become so burdensome to defense counsel that the criminal justice system suffers as a result.
Finally, the Supreme Court determined that in assessing an ineffectiveness claim, either the performance component of the test or the prejudice component can be evaluated first. If either one of these showings is insufficient, defendant's claim must fail.
Applying the principles of Strickland v. Washington to this case does not require a different conclusion than was reached by the trial court. The facts developed in the record make clear that the conduct of Downs' counsel was not unreasonable under the circumstances. The record reflects that counsel made a reasonable investigation and that his decisions now being challenged were not outside the range of professionally competent assistance. Moreover, even if we had found counsel's conduct to have been unreasonable, we would also have concluded that the counsel's deficiencies did not prejudice Downs.
We turn now to another point. Downs contends that the contingent fee contract between him and his defense counsel created a conflict of interest which violated his right to effective assistance of counsel. Although such a contingent fee contract is improper and unethical in a criminal case, it does not alone establish denial of effective assistance of counsel. Such unprofessional conduct is one factor to be considered by the trial court under the totality of the circumstances in determining whether a defendant has been deprived of effective assistance of counsel. Defendant must prove that this agreement affected trial counsel's representation. The trial court properly concluded that there was no such showing in this case.
Accordingly, we conclude that the trial court properly denied Downs' 3.850 motions, and we affirm.
It is so ordered.
ADKINS, BOYD, OVERTON, McDONALD, EHRLICH and SHAW, JJ., concur.
NOTES
[1] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
[2] Recently, in Jackson v. State, 452 So.2d 533 (Fla. 1984), we held that the Knight standard does not differ significantly from the standard announced by the United States Supreme Court in Strickland.