374 So.2d 944 (1979)
Monroe HOLMES, Appellant,
v.
STATE of Florida, Appellee.
No. 48392.
Supreme Court of Florida.
April 26, 1979.
Rehearing Denied October 4, 1979.
*945 Richard L. Jorandby, Public Defender, and Craig S. Barnard, Asst. Public Defender, West Palm Beach, for appellant.
Jim Smith, Atty. Gen., and Carolyn M. Snurkowski, George R. Georgieff and Richard W. Prospect, Asst. Attys. Gen., Tallahassee, for appellee.
ADKINS, Justice.
This is a direct appeal from a judgment adjudging defendant guilty of murder in the first degree and a sentence of death.
Defendant Holmes was arrested April 5, 1974, for the homicide of police officer Meredith Runck. An indictment was returned charging defendant with murder in the first degree and arraignment was held on April 25, 1974. Defendant tendered a plea of guilty to the offense of murder in the first degree.
Defendant presented witnesses regarding a factual basis for the plea on April 26, 1974, and the trial court then accepted the plea of guilty. Defense counsel stated that defendant waived the jury in the advisory sentence proceeding, so testimony regarding aggravating and mitigating circumstances was presented without a jury on June 6, 1974.
On August 13, 1974, defendant filed a suggestion of insanity and motion for mental examination. The motion was granted.
Arguments on sentencing were not heard until March 21, 1975.
On September 5, 1975, new defense counsel filed a motion to withdraw the guilty plea. This motion was based primarily upon the reports of the court-appointed psychiatrist, which defendant says indicated that he was not competent at the time of the offense and raised a doubt as to his competency to enter the plea of guilty. The motion to withdraw the guilty plea was denied by the trial court on October 15, 1975.
On November 7, 1975, defendant was adjudged guilty of murder in the first degree and sentenced to death.
The findings of fact by the trial judge contained the following:
"This Defendant, MONROE HOLMES, was indicted for the crime of murder in the first degree. On arraignment, he plead guilty to this charge, and waived jury trial of the issue of the imposition of sentence. The Court reluctantly determined that this was a matter of right and that it could not compel Defendant to submit to a jury trial as to imposition of sentence. Thereafter, approximately one hour was spent in advising Defendant of his rights to jury trial, and of the sentences which might be imposed by the Court, as well as his right, in any trial, to *946 remain silent and not testify. Defendant was further interrogated as to whether he had been made any promises, or subjected to any threats, which he denied. He further repeatedly stated that he understood what he was doing. Finally, Defendant testified that he had discussed his case with the attorney representing him and that he was satisfied with the attorney's services and representation.
"Thereafter, the Court held two evidentiary hearings wherein eye witnesses testified as to the commission of the crime. Later, argument of counsel as to the sentence was heard.
"Chapter 921 Florida Statutes governs sentencing in capital felonies. It requires the Court to make findings upon circumstances enumerated therein, which circumstances are divided into two categories.
"First, aggravating circumstances, subsections (a) thru (h); and second, mitigating circumstances, subsections (a) thru (g).
"As to aggravating circumstances the Court finds: subsection (e), that the capital felony was committed for the purpose of avoiding or preventing a lawful arrest or affecting an escape from custody. Subsection (g), the capital felony was committed to disrupt the enforcement of laws. Subsection (h), the capital felony was especially heinous and atrocious.
"As to mitigating circumstances the Court finds: subsection (a) that the Defendant has no significant history of prior criminal activity, but that none of the other mitigating circumstances listed in the statute were present. It is thereupon,
"ORDERED AND ADJUDGED that you, MONROE HOLMES, having plead guilty to the charge of murder in the first degree are found to be guilty of such offense. The Court having heretofore heard arguments of counsel as to sentencing, it now asks if you have any lawful reason why the sentence of the law should not be imposed.
"It is the Judgment of this Court that, for your adjudication of guilt of the crime of murder in the first degree, you are hereby sentenced to the penalty of death, the sentence to be carried out in accordance with the laws of the State of Florida."
The victim, Meredith Runck, was a police officer and the homicide was committed after defendant was arrested at the home of Dorothy Campbell, the mother of defendant's girl friend, Mary. Defendant had gone to the home, entered, created a disturbance, and asked to see Mary. The police were called and defendant refused to leave the home. The victim spoke with the defendant for about twenty minutes and asked him to leave. The officer told defendant not to go into the house or he would be arrested. Defendant, nevertheless, came to the door of the house and the arrest resulted. Defendant and the officer walked peacefully to the police cruiser, but, when they reached the cruiser, they began to wrestle. The defendant got on top of the officer and began hitting him. He grabbed the officer's gun, stood up, and fired more than four shots. Other officers then arrived and took defendant into custody.
Defendant contends that the plea of guilty was accepted without an affirmative showing that it was voluntarily and intelligently made, as the court only personally addressed defendant twice and relied on representations of defense counsel and the prosecutor for the majority of the determination. When the plea was tendered, the attorney for defendant stated that he had consulted a privately retained psychiatrist and had received a verbal report leading him to believe that "the move we are taking at this time is proper." An eye witness to the homicide testified at the hearing determining the factual basis for the plea. The intense and exhaustive care with which the trial court advised defendant of his rights, and determined that defendant understood the effect of his plea of guilty, was clearly established.
*947 Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), does not require that the exhaustive inquiry comes from the lips of the trial judge. The court stated in Church v. State, 299 So.2d 649 (Fla. 4th DCA 1974):
"It would seem quite acceptable that as to a defendant desiring to plead guilty, the trial judge simply add to his repertoire of questions such additional ones concerning the accused's participation in the charged offense as to make certain that there is shown on the record a factual basis in sufficient detail to show every element of the crime charged. Of course, it is not mandatory that the court personally conduct the interrogation of the accused for this purpose. Some of the acceptable alternatives as approved in the federal cases is for the court to take testimony from one or more witnesses sufficient to show a factual basis for the plea, or to have the prosecuting attorney give a detailed recitation of the evidence against the defendant in his presence, without his objection or contradiction and with his subsequent admission as to the truth of the evidence recited." At 651.
The lower court meticulously followed the principles outlined in Lamadline v. State, 303 So.2d 17 (Fla. 1974). As in the Lamadline case,
"Testimony was presented establishing in detail a factual basis for this plea, the defendant being present and having an opportunity through his counsel to cross-examine the witnesses... . The court found again that (1) the defendant, with full knowledge of the consequences and knowing that he was acting contrary to the advice of his counsel, voluntarily and intelligently entered the plea of guilty to the offense; (2) the facts were sufficient to support the plea." At 19.
The best evidence that defendant understood and voluntarily entered his plea of guilty came from his own lips when the court asked whether any threats were made to force him to plea and defendant replied, "No, Sir. I make it willingly." See Hopkins v. State, 275 So.2d 597 (Fla. 2d DCA 1973); Williams v. State, 316 So.2d 267 (Fla. 1975).
Thereafter on June 6, 1974, an evidentiary hearing was held on the issue of aggravating and mitigating circumstances. After this hearing the original defense counsel resigned from the office of public defender and new defense counsel was appointed. The new attorney filed a suggestion of insanity and two psychiatrists were appointed by the court. Based upon the report of the psychiatrist, defendant contends that the court erred in refusing to allow the withdrawal of the plea of guilty in view of the possibility of the meritorious defense of insanity. Also, defendant says that he was not mentally competent to enter the plea of guilty and the waiver of the jury for the advisory sentencing procedure was not knowingly and voluntarily made.
These questions were answered by the trial judge when he used the following language in his order denying the motion to withdraw the guilty plea:
"[C]ounsel for Defendant argued his motion to allow withdrawl [sic] of guilty plea. The State presented its answer in opposition thereto. The Court has thoroughly considered arguments of counsel, and all authorities cited. This entire problem is thoroughly considered and discussed in the case of Williams v. State, (Fla., 316 So.2d 267) decided by the Supreme Court of Florida, the opinion becoming final August 28, 1975. In that case the Supreme Court spelled out the principles which control the acceptance of a plea of guilty.
"The Court may, in its discretion, and upon good cause shown, at any time before sentence, permit a plea of guilty to be withdrawn. In the instant case, Defendant does not contend that there was any undue influence or coercion involved. He does not claim that there was no factual basis established in the record sufficient to support the offense for which he entered his guilty plea. This was proven by the testimony of eye witnesses. His motion is based on the allegation that he was not aware of the *948 possible defense that he was psychotic at the time he committed the offense. Defendant was represented by one of the most experienced and competent defense attorneys in this circuit. Almost immediately after the Defendant was indicted, his counsel caused him to be examined by a prominent psychiatrist with the view in mind of raising the very defense of which he now avers that he was not aware.
"Defendant's motion further states that there is a doubt that he was mentally competent at the time of the plea conference. There has been no plea conference in this case.
"Some comment on the psychiatric proceedings in this case would seem to be pertinent. As has been stated above, the Defendant was promptly examined by a prominent psychiatrist and found to be competent. This was in April, 1974, a few days after he committed the offense. On August 13, 1974 Defendant's Motion for Mental Examination was filed. This motion stated that the Defendant was at the time it was filed psychotic and that this condition had arisen `since the last proceeding in this cause.' Reports were received to the general effect that Defendant was mentally competent to stand trial. Comments were made about the sanity of Defendant at the time the offense was committed. These came six or more months after this question had already been settled. They were not requested, and were not a subject of the referral. It is thereupon,
"ORDERED AND ADJUDGED as follows:
"1. That Defendant's Motion to Withdraw Guilty Plea is denied."
There was no showing that defendant was insane or impaired at the time of the offense. He was immediately determined to be sane and competent by a privately retained psychiatrist within weeks of the murder. Psychiatrists who examined him some six months later stated that he suffered with a psychosis to some degree. In Jones v. State, 332 So.2d 615 (Fla. 1976), Mr. Justice Sundberg, specially concurring in an opinion, correctly states the law of Florida.
"It is the law of Florida that all men are presumed sane, but where there is testimony of insanity sufficient to present a reasonable doubt of sanity in the minds of the jurors the presumption vanishes and the sanity of the accused must be proved by the prosecution as any other element of the offense, beyond a reasonable doubt... .
"The test is whether or not the evidence was such that the jury could only have concluded that there was reasonable doubt of sanity and the absence of evidence sufficient to overcome that reasonable doubt... .
"In the case at bar the jury could have refused to accept the opinion of the psychiatrist on the grounds that his examination was of short duration occurring 3 and 1/2 months after the fact and that the opinion was predicated in part upon statements given by the defendant which the jury could have concluded were self-serving. Likewise the jury could have rejected the opinion of the psychologist on the basis that it was predicated on the intoxicated state of the defendant at the time of the act. The evidence of intoxication was at best conflicting. It is the province of the jury to resolve such conflicts. See Byrd v. State, supra [Fla., 297 So.2d 22], at page 25. Similarly, even if the testimony of defendant's experts must be construed to compel a finding of reasonable doubt as to sanity, the jury was authorized to conclude from the lay testimony heretofore recited that the conduct of defendant prior and subsequent to the event, which pointed to sanity on his part, was sufficient to overcome the doubt created by the expert testimony." At 620-21.
Although the facts and proceedings in the Jones' case are not identical with those involved in this case, the reasoning of the court is applicable to the situation faced by the trial judge herein.
The record is absolutely void of any indication that defendant was insane or impaired at his arraignment. It is clearly *949 shown that defendant knew he had wrongfully killed the police officer and, after consultation with his attorney, agreed to plead guilty to the crime charged.
The trial court may in its discretion, and shall upon good cause, at any time before sentence, permit a plea of guilty to be withdrawn. Fla.R.Crim.P. 3.170(f). The trial judge found that there was not "good cause" shown to warrant the defendant's withdrawal of his guilty plea. Therefore, the denial of the motion to withdraw his guilty plea should stand absent a showing that the trial judge abused his discretion. The burden of showing that the trial judge abused his discretion lies with the defendant. Dixon v. State, 287 So.2d 698 (Fla. 1st DCA 1973); Morgan v. State, 142 So.2d 308 (Fla. 2d DCA 1962).
The trial court was correct in denying the motion to withdraw the guilty plea.
Section 921.141(1), Florida Statutes, contemplates the possibility of the waiver of a trial jury during the sentencing procedure. Defendant was represented by counsel and the record contains an expressed waiver by counsel in the presence of the defendant. This was sufficient. State v. Carr, 336 So.2d 358 (Fla. 1976). The defendant could have at any time instructed his attorney or the court of his desire to have a jury impaneled for the sentencing portion in his case. It does not appear from the record that any such instruction was ever given. The waiver was voluntarily offered by defendant, was proper, and was within the dictates of Section 921.141(1), Florida Statutes.
After the waiver by the defendant of a trial jury during the sentencing procedure, the trial court "reluctantly determined that this was a matter of right and that it could not compel defendant to submit to a jury trial as to imposition of sentence." This determination was made prior to our pronouncement in State v. Carr, supra, that the trial judge in his discretion could require an advisory jury recommendation. As a courtesy and accommodation to the trial judge we relinquished jurisdiction so that he could exercise his discretion as to the impaneling of a jury for sentence recommendation. The trial judge is now deceased making such procedure impossible and immaterial. The defendant, having waived the jury cannot now complain about the failure of the trial judge to exercise his discretion to impanel a jury for the judge's benefit. The defendant received that which he requested, i.e., a sentencing determination by the trial judge without the advisory recommendation of a jury.
Upon request of this Court, the trial judge responded as to matters which he considered in imposing the death sentence. His response reads as follows:
The sentence was imposed in this case without consideration of any information not known to the appellant. No information from any presentence investigation, juvenile case information or psychiatric reports was used, or before the court at any time in connection with the sentencing. Defendant's counsel objected to the ordering of a presentence investigation, the objection was sustained, and none was ever made. Two psychiatrists' reports were made at defendant's request and defendant's counsel received them. They were in connection with a motion made during the progress of the case which had no connection with sentencing. They were not before the court or considered in the sentencing since they had no bearing thereupon.
The only matters considered in the sentencing were the testimony produced on behalf of the State in open court, including that of eye witnesses, who were all cross-examined by defense counsel, and that of six witnesses called by the defense in mitigation.
The record abundantly reflects that defendant after being placed under arrest attempted to break away from the officer. During the ensuing scuffle, the defendant got the officer's gun and emptied four or more shots into the body of the officer. The record shows that during the events leading up to the murder, the officer attempted to convince defendant to leave the *950 premises prior to placing him under arrest. Even after the murder, the defendant attempted unsuccessfully to impede his arrest by other officials who arrived on the scene.
The record does not show that, at the time of the murder, the defendant was substantially impaired mentally or that he suffered from extreme emotional stress. This case differs from Jones v. State, supra. In Jones, the jury unanimously recommended that he be sentenced to life imprisonment but the trial court sentenced defendant to death. The court described his mental condition as follows:
"[T]he Appellant had a paranoid psychosis which was undenied and unrefuted, the degree of which no one can fully know. The record shows that for a long time Appellant had believed that persons were attempting to kill him and were following him and that he had other hallucinations. The testimony makes it clear that Appellant suffered a paranoid psychosis to such an extent that the full degree of his mental capacities at the time of the murder is not fully known, but it is reasonable to assume that this mental illness contributed to his strange behavior. Extreme emotional conditions of defendants in murder cases can be a basis for mitigating punishment. The jury had the benefit of seeing and hearing Appellant as he testified in the courtroom, and all twelve members of the jury thought that Appellant should not die in the electric chair. After carefully reviewing the record this Court has determined that the recommendation of the jury was correct. Appellant clearly had a mental deficiency. The court should have followed the jury's recommendation for a life sentence."
332 So.2d at 619.
Unlike Jones, the defendant Holmes only recently allegedly exhibited odd behavior. The trial judge did not find Holmes' alleged emotional state substantial or extreme enough to consider as a mitigating circumstance.
The fact that defendant was only twenty five years of age and had no prior criminal activity does not constitute persuasive mitigating circumstances. See Alvord v. State, 322 So.2d 533 (Fla. 1975); Songer v. State, 322 So.2d 481 (Fla. 1975).
Defendant also says that the findings of fact entered by the trial judge were inadequate. There is no prescribed form for the order containing the findings of mitigating and aggravating circumstances. The primary purpose of requiring these findings to be in writing is to provide an opportunity for meaningful review by this Court so that it may be determined that the trial judge viewed the issue of life or death within the framework of the rules provided by statute. It must appear that the sentence imposed was the result of reasoned judgment. The findings meet these criteria. Furthermore, this Court in State v. Dixon, 283 So.2d 1 (Fla. 1973), stated:
When one or more of the aggravating circumstances is found, death is presumed to be the proper sentence unless it or they are overridden by one or more of the mitigating circumstances provided in Fla. Stat. § 921.141(7), F.S.A. All evidence of mitigating circumstances may be considered by the judge or jury.
At 9.
Other questions raised by the defendant are without merit. See Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976).
After a careful consideration of the record as well as the contentions of the defendant, we are of the opinion that the order denying the motion of withdrawing the plea of guilty and the subsequent judgment of guilt were correct. Furthermore, the sentence of death was appropriate under the circumstances of the case.
The judgment and sentence are therefore affirmed.
It is so ordered.
BOYD, OVERTON, SUNDBERG and HATCHETT, JJ., concur.
ENGLAND, C.J., concurs as to conviction and dissents as to imposition of a sentence of death.