390 So.2d 715 (1980)
STATE of Florida, Petitioner,
v.
Heyward THOMPSON, Respondent.
No. 58324.
Supreme Court of Florida.
November 20, 1980.
Jim Smith, Atty. Gen., and David P. Gauldin, Asst. Atty. Gen., Tallahassee, for petitioner.
Gerald R. Hart, Jacksonville, for respondent.
McDONALD, Justice.
The First District Court of Appeal has certified its decision in Thompson v. State, 378 So.2d 859 (Fla. 1st DCA 1979), as passing on a question of great public interest *716 because that decision will affect a Florida standard jury instruction in criminal cases. We have jurisdiction pursuant to article V, section 3(b)(3), Florida Constitution (1972), and reverse the district court's decision.
A jury convicted Thompson of possession of a short-barreled shotgun in violation of section 790.221, Florida Statutes (1977).[1] The district court reversed his conviction, holding that the state needed to prove, as an element of the crime, that Thompson's shotgun was not an antique weapon. To support its holding, the court quoted the following general rule, as stated in Baeumel v. State:[2]
if there is an exception in the enacting clause, the party pleading must show that his adversary is not within the exception; but, if there be an exception in a subsequent clause, or subsequent statute, that is a matter of defense, and is to be shown by the other party.
378 So.2d at 860.
Immediately preceding the above-quoted rule, however, the Baeumel court set out the other part of that rule:
"In a statutory offense, it depends very much, though not exclusively, on the words of the statute, whether a particular matter is one of defense, or whether the negative of the matter enters into the definition of the crime... ."
26 Fla. at 75, 7 So. at 372 (quoting Bishop on criminal law). After citing the complete rule, the court held that whether Baeumel was a druggist was a matter of defense, not an element which the state had to disprove, notwithstanding the relative locations of the definition and the exception in the statute.
Looking at the words of the instant statute, we find the antique weapon proviso to be an exception just as much as the exception in 790.221(3).[3] We cannot determine the reason for placing that exception in the statute's first subsection, but we also cannot divine any legislative intent that lack of an exemption is an element of the offense. See State v. Buchman, 361 So.2d 692 (Fla. 1978). We hold, therefore, that whether a proscribed weapon is an antique[4] is a matter of defense; the state is not required to prove the negative as an element of the offense.
The decision of the First District Court of Appeal is quashed and this case is remanded with directions to affirm the judgment of the trial court.
It is so ordered.
SUNDBERG, C.J., and ADKINS, OVERTON and ENGLAND, JJ., concur.
BOYD and ALDERMAN, JJ., dissent.
NOTES
[1] § 790.221 provides:

(1) It is unlawful for any person to own or to have in his care, custody, possession, or control any short-barreled rifle, short-barreled shotgun, or machine gun which is, or may readily be made, operable; but this section shall not apply to antique firearms.
(2) Any person convicted of violating this section is guilty of a felony and upon conviction thereof shall be punished by imprisonment in the state penitentiary not to exceed 5 years.
(3) Firearms in violation hereof which are lawfully owned and possessed under provisions of federal law are excepted.
[2] 26 Fla. 71, 7 So. 371 (1890).
[3] Unlike the 1st DCA, therefore, we find the antique weapon proviso to be "an exception in a subsequent clause." A "clause" is defined as "a word group formed by subject and predicate elements but constituting a member of a complex or compound sentence instead of ranking as a completed sentence." Webster's New International Dictionary 497 (2d ed. 1947). We find that the exception contained in subsection 790.221(1) meets this definition.
[4] § 790.001(1), Fla. Stat. (1977), defines "antique firearm" as:

[A]ny firearm manufactured in or before 1898 (including any matchlock, flintlock, percussion cap, or similar early type of ignition system) or replica thereof, whether actually manufactured before or after the year 1898; and also any firearm using fixed ammunition manufactured in or before 1898, for which ammunition is no longer manufactured in the United States and is not readily available in the ordinary channels of commercial trade.