429 So.2d 297 (1983)
Monroe HOLMES, Appellant,
v.
STATE of Florida, Appellee.
No. 61672.
Supreme Court of Florida.
February 3, 1983.
Rehearing Denied April 27, 1983.
Deborah J. Miller, Simon, Schindler & Hurst, P.A., Miami; Sharon B. Jacobs of Chaykin, Karlan & Jacobs, Coral Gables, for appellant.
Jim Smith, Atty. Gen. and Carolyn M. Snurkowski, Asst. Atty. Gen., Tallahassee, for appellee.
*298 PER CURIAM.
Monroe Holmes, a state prisoner under sentence of death, appeals the denial of his motion to vacate judgment and sentence filed pursuant to Florida Rule of Criminal Procedure 3.850. This Court previously affirmed appellant's conviction and sentence. Holmes v. State, 374 So.2d 944 (Fla. 1979), cert. denied, 446 U.S. 913, 100 S.Ct. 1845, 64 L.Ed.2d 267 (1980).
On April 5, 1974, Holmes was arrested and charged with the first-degree murder of a police officer. The court appointed the public defender to represent Holmes, and the public defender assigned the case to assistant public defender Thomas Bratten. Upon advice of counsel, Holmes pled guilty to the charge at his arraignment on April 25, 1974.
On June 6, 1974, the court convened for the purpose of determining the sentence to be imposed. At this time defense counsel waived appellant's right to have a jury empaneled for a sentencing hearing pursuant to section 921.141(1), Florida Statutes (1973). At the non-jury sentencing proceeding which followed, the state presented no evidence. The defense called five lay witnesses who testified about Holmes's bizarre behavior around the time of the murder. The judge announced that sentence would be imposed at a later date. Prior to the date set for sentencing, however, defense counsel informed the court that appellant had been transferred from the county jail to a mental health facility and moved that sentencing be postponed until appellant could be mentally examined. The court granted the motion and appointed two psychiatrists to examine Holmes. The psychiatrists concluded that Holmes was capable of understanding the nature and purpose of the pending proceedings, but also opined that he may have been insane at the time of the murder. On March 21, 1975, the court held a hearing on the question of sentencing. The state did not argue for the death penalty. Defense counsel, after announcing his decision to leave the employ of the public defender's office, voiced general philosophical and sociological objections to capital punishment.
Following Thomas Bratten's departure from the public defender's office, replacement counsel filed a motion to withdraw the plea of guilty. The court denied the motion and on November 7, 1975, sentenced Monroe Holmes to death. During the pendency of the original appeal, this Court directed that the trial judge state in writing whether he had considered any information not disclosed to the defendant. The trial judge responded that there had been no presentence investigation and that he had not considered the two court-appointed psychiatrists' reports. As was stated above, this Court affirmed the conviction and sentence.
Subsequently Holmes moved for an order vacating judgment and sentence pursuant to Rule 3.850, claiming that he had not been afforded effective assistance of counsel before the trial court. The trial court held an evidentiary hearing. After hearing the testimony of several witnesses, including Thomas Bratten, the court denied the motion to vacate.
In this appeal Holmes argues on several grounds that he did not receive effective assistance of counsel before the trial court. The specific points raised fall into two categories: those pertaining to counsel's representation in connection with appellant's decision to plead guilty and those pertaining to the proceedings on the question of sentencing. For the reasons set forth below we find that Holmes is not entitled to relief on any point in the first category but is entitled to relief on the ground of ineffective assistance of counsel during the proceedings on sentencing. We therefore vacate the sentence of death and order that a new sentencing hearing be held.
Under the first category appellant's primary argument is that defense counsel rendered ineffective assistance of counsel in advising appellant to plead guilty without adequately investigating the possibility of raising the defense of insanity. At the hearing below the public defender's investigator testified that after he interviewed Holmes and his relatives he delivered a *299 report to defense counsel recounting some of the incidents of Holmes's bizarre behavior. Defense counsel then employed a highly respected psychiatrist to examine Holmes to determine whether there was any reason to believe that he was insane at the time of the murder. At the hearing below the psychiatrist testified that he interviewed Holmes on April 15 and 16, 1974 and that Holmes freely confessed to the murder. The doctor testified further that he concluded from his examination that Holmes was legally sane. He then explained what happened when he reported his findings to defense counsel:
Q Describe how those interviews took place with Mr. Bratten? What did you discuss with him, specifically?
A Well, those interviews took place in my office as well as over the telephone and were numerous. This does not fully reflect the number of hours that were spent on this case. I told Mr. Bratten, in summary, that there was absolutely nothing that I could say in a courtroom that would in any way justify or help him get his client free of this charge and the best thing he could do would be to keep me away from the courthouse.
Q Yes, sir. And those discussions took place after your first interview on April the 15th, 1974?
A Yes, Sir.
Q And April the 16th, 1974?
A Yes, sir.
Q Okay.
A They also took place after that.
Q All right, sir. When did those occasions take place?
A Right on through and following my other examination into the  June and July of '74. There was much discussion about this.
Q Approximately how many hours would you say that you spent discussing this case, the case of Monroe Holmes, with Thomas Bratten?
A Well, I have never added it all up, but it seems to me that this case took about four times the amount of time that is reflected here and I think that we have talked more than two hours about this.
Q Talked with Mr. Bratten over two hours?
A Yes. Mr. Bratten is an obsessive, compulsive personality type. He is very precise. He 
MR. SANDBERG: Objection.
THE COURT: Well, objection overruled.
BY MR. MOYLE:
Q Go ahead, doctor.
A He asks the same question four different ways and he seeks at every opportunity to alter my statements or opinions so that he could get his client back on the street.
... .
Q Mr. Bratten ask you a great many questions as to how perhaps he could get his client off in this case?
A Yes, sir.
Q Mr. Bratten appear to know what he was doing in his questioning of you?
A Yes, sir. He's very qualified in interrogating a psychiatrist.
Q You dealt with him before?
A Yes, sir.
Q Did he ask the same kind of questions on other cases as he did on this one, Monroe Holmes?
A Yes, sir.
Q Did he always appear diligent to you?
MR. SANDBERG: Objection.
THE COURT: Objection overruled.
THE WITNESS: Yes, he did.
Record on Appeal, vol. 2, at 186-90.
Defense counsel testified that he decided to advise Holmes to plead guilty two days after receiving the psychiatrist's oral report. Counsel explained that he felt there was no chance of successfully asserting an insanity defense without strong, effective expert testimony. He also testified that he talked to appellant two to four times before arraignment and explained the consequences of a plea of guilty. At the arraignment, Holmes said that he understood the proceedings and the consequences of his plea and that he was pleading guilty willingly.
*300 We find that the defense attorney's advising appellant to plead guilty was not "a substantial and serious deficiency" measurably below the standard of reasonable effectiveness expected of attorneys in criminal cases. Knight v. State, 394 So.2d 997, 1001 (Fla. 1981). The record shows that defense counsel did adequately investigate the possibility of asserting an insanity defense before advising Holmes to plead guilty. He obtained the opinion of a well-respected expert and interviewed the accused himself. Given the psychiatrist's adamant position that appellant was sane at the time of the murder, defense counsel was not obligated to seek additional expert opinion in the hope of fabricating a defense.
The second category of arguments is that defense counsel's representation throughout the sentencing proceedings was substantially deficient. Specific acts which appellant points to in claiming that counsel was ineffective are: the waiver of the right to an advisory sentencing jury, the failure to contest or negate the existence of aggravating circumstances, and the failure to present available expert evidence of appellant's mental and emotional condition in support of mitigating circumstances.
With regard to the first point, we do not find that defense counsel's decision to waive appellant's right to an advisory sentencing jury was a substantial and serious deficiency measurably below the expected standard. Defense counsel testified below that he made this decision because of his belief, based upon his experience with juries in that community, that a jury would probably recommend a death sentence. Thus it was a tactical decision and was within the range of reasonable choice under the circumstances. The fact that the sentencing proceeding without a jury resulted in a death sentence is no ground to conclude that counsel's decision was a deficiency.
However, we find merit in the remaining two contentions. The record shows that when, on March 21, 1975, the court heard argument concerning sentencing, defense counsel did not contest the applicability of the statutory aggravating circumstances nor argue for the existence of several mitigating factors. Defense counsel's arguments concerning aggravating and mitigating circumstances were limited to the following statements:
The act of course, was heinous, but the person described by neighbors, friends and family, he has virtually no prior criminal record which speaks as something other than the death penalty. I could run down the aggravating and mitigating circumstances, but I think the Court will find that of the mitigating circumstances that stand out, the fact that he was under a mental disturbance at that time quite obviously, and the fact that he has no prior criminal record is important and outstanding.
Second Supplemental Record on Appeal, at 52-53.
Instead of arguing that the crime was not heinous, atrocious, or cruel, defense counsel conceded the existence of this questionable aggravating circumstance. Furthermore he made no reference to the reports of the two court-appointed psychiatrists who suggested that Holmes may have been in some kind of disturbed psychological state at the time of the murder. Although these reports were delivered after the sentencing hearing was held, counsel made no attempt to reopen the proceeding for the purpose of presenting the reports or testimony of the psychiatrists. As a result, the court imposed sentence without the benefit of available expert opinion pertaining to Holmes's mental and emotional condition. A psychological disturbance at the time of a capital felony may be relevant in mitigation even though it is not sufficient ground for invoking the insanity defense. State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974). Defense counsel also avowed that it did not occur to him to request a presentence investigation even though appellant's lack of a criminal record would have rendered the report, at least in part, a favorable one for mitigation.
We find defense counsel's representation during the proceedings on sentencing *301 to have been substantially deficient and measurably below the standard for competent counsel. Instead of concentrating on the particular mitigating aspects of the case, defense counsel made a general argument against capital punishment and expressed the hope that the judge had "mellowed" since the last time he had sentenced an offender to death. Furthermore we find that under the circumstances the deficiency was so substantial as to have probably affected the outcome of the proceedings on the question of sentencing. Since the response of the state in the proceeding below and on appeal has not shown beyond a reasonable doubt that Holmes was not prejudiced by the ineffectiveness of the legal counsel he received, we find that Holmes is entitled to relief on his motion to vacate the sentence of death.
That portion of the trial court's order which denied the motion with regard to the judgment of conviction is affirmed. That portion which denied the motion with regard to the sentence of death is reversed. We vacate the sentence of death and remand the case with instructions that a new sentencing hearing be held.
It is so ordered.
ALDERMAN, C.J., BOYD, McDONALD and EHRLICH, JJ., concur.
ADKINS and OVERTON, JJ., dissent.