784 So.2d 1210 (2001)
Mark ROYAL, Appellant,
v.
STATE of Florida, Appellee.
No. 5D00-583.
District Court of Appeal of Florida, Fifth District.
April 12, 2001.
James B. Gibson, Public Defender, and John M. Selden, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Alfred Washington, Jr., Assistant Attorney General, Daytona Beach, for Appellee.
GRIFFIN, J.
Appellant, Mark Royal ["Royal"], appeals a final judgment after pleading no contest to the sale of cocaine within 1,000 feet of a convenience business, and possession with intent to sell. Royal reserved his right to appeal the trial court's denial of his motion to dismiss.
Royal challenges section 893.13(1)(e), Florida Statutes (1999), as being unconstitutionally void for vagueness in its creation of a 1,000 foot drug-free zone around convenience businesses. The point of departure for his argument is that the legislature chose not to use the commonly understood term, "convenience store", instead choosing the term "convenience business," and has defined that term only by reference to another statute, section 812.171, Florida Statutes (1999).
Section 893.13(1)(e) provides:

*1211 Except as authorized by this chapter, it is unlawful for any person to sell, manufacture, or deliver, or possess with intent to sell, manufacture, or deliver, a controlled substance not authorized by law in, on, or within 1,000 feet of a physical place for worship at which a church or religious organization regularly conducts religious services or within 1,000 feet of a convenience business as defined in s. 812.171.
(Emphasis added.) Section 812.171, part of the Convenience Business Security Act, provides:
[T]he term `convenience business' means any place of business that is primarily engaged in the retail sale of groceries, or both groceries and gasoline, and that is open for business at any time between the hours of 11 p.m. and 5 a.m. The term "convenience business" does not include:
(1) A business that is solely or primarily a restaurant.
(2) A business that always has at least five employees on the premises after 11 p.m. and before 5 a.m.
(3) A business that has at least 10,000 square feet of retail floor space.
The term `convenience business' does not include any business in which the owner or members of his or her family work between the hours of 11 p.m. and 5 a.m.
For the legislature to define the term in Section 893.13(1)(e) by reference to section 812.171 was, on its face, a very odd thing to do. Section 893.13(1)(e), which is designed to eliminate certain criminal conduct in proximity to such a business, is manifestly different from that of The Convenience Business Security Act, which is designed to require specific security measures and training programs. It is probable that the legislature intended that "convenience business" have the broad definition contained in section 812.171, not including the exceptions; i.e. the legislature intended to refer to the description in section 812.171 of what a "convenience business" is, not what it is not. It would be helpful if our legislature would try to draft statutes less obliquely, but the problem in this case is one of construction, not constitutionality.
Even if strict construction of criminal statutes were to require incorporation of the four exceptions in interpreting section 893.13(1)(e), these exceptions are matters of affirmative defense. It has long been the rule that if there is an exception in an enacting clause, the party pleading must show that his adversary is not within the exception. State v. Robarge, 450 So.2d 855 (Fla.1984); Baeumel v. State, 26 Fla. 71, 7 So. 371 (1890). If the exception is found in a subsequent clause or statute, however, it is a matter of defense. See Robarge; Baeumel.
The defendant has the burden of going forward to show that the affirmative defense exists and the burden then shifts to the state to prove the nonexistence of the defense beyond a reasonable doubt. See Holmes v. State, 374 So.2d 944 (Fla. 1979); Wright v. State, 442 So.2d 1058 (Fla. 1st DCA 1983). In Robarge v. State, 432 So.2d 669 (Fla. 5th DCA 1983); review denied with opinion, 450 So.2d 855 (Fla. 1984), the statute involved was section 790.05, Florida Statutes, "penalty for carrying pistol, electric weapon or device, or repeating rifle without first obtaining a license." The statute read, in part:
Whoever shall carry around with him, or have in his manual possession, ... any pistol, electric weapon or device, or Winchester rifle or other repeating rifle without having a license ... shall be guilty of a misdemeanor.... (Emphasis added)
This court analyzed this provision based on Baeumel and concluded that the language in the statute was an exception in the enacting clause; therefore, the state was *1212 required to prove the defendant did not fall within an exception. Robarge at 670. On review, the supreme court agreed and noted that the "without a license" provision in the statute was a prepositional phrase contained in the enacting clause of the statute.
The opposite result was reached in State v. Thompson, 390 So.2d 715 (Fla.1980) and State v. Hicks, 421 So.2d 510 (Fla.1982). In Thompson, the statute outlawed possession of certain firearms and provided that: "this section shall not apply to antique firearms." The supreme court held that whether a firearm was an antique was a matter of defense, and the state was not required to prove a negative as an element of the offense. In Hicks, the burglary statute was at issue. There, the statute defined burglary as:
[E]ntering or remaining in a structure or conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter or remain. (Emphasis added).
The court held that the consent to enter the premises was an affirmative defense, not an element of the offense. The court noted that the word "unless" was a qualifier to the primary sentence of the statute, separating the consent phrase from the enacting clause, thereby rendering the consent portion a defense.
In this case, as in Thompson and Hicks, the four exceptions are affirmative defenses. The first portion of the section 812.171 defines the meaning of "convenience business." The remaining portions of the statute exclude certain types of businesses from the general definition. Thus, it is up to a defendant to raise any of these exceptions as defenses; the state is not required to prove them in presenting its prima facie case. Holmes; Wright.
We find no merit in Mr. Royal's complaint that the statute has a fatal constitutional "vagueness" infirmity because he cannot tell just by looking at a given convenience store whether it is one that puts him at risk for the greater penalty. The definition of "convenience business" is clear and the exceptions are clear. If, in selecting the sites for his drug sales, Mr. Royal was in doubt as to whether a particular convenience business fell into one category or the other, he should have inquired. The statute is constitutional. Dickerson v. State, 783 So.2d 1144 (Fla. 5th DCA 2001).
AFFIRMED.
SAWAYA, J., concurs.
SHARP, W., J., dissents, with opinion.
SHARP, W., J., dissenting.
I respectfully dissent. The outcome of this case should parallel Brown v. State, 629 So.2d 841 (Fla.1994). Section 893.13(1)(e), which creates a drug-free zone within a thousand feet of a "convenience business," by imposing enhanced penalties on those who sell, purchase, manufacture, deliver, or possess controlled substances within the zone, fails to give adequate notice as to what conduct is prohibited. Thus, in my view, it is facially unconstitutional under due process standards.
In Brown, a different part of the same statute involved in this case was held unconstitutionally vague. The statute in Brown created a drug-free zone, by imposing enhanced penalties for drug offenses committed within 200 feet of a "public housing facility". § 893.13(1)(i), Fla. Stat. (Supp.1990). The Florida Supreme Court held that the term "public housing facility" did not give adequate notice of what conduct is prohibited and because of its imprecision, it could invite arbitrary and discriminatory enforcement. There was no definition of the term "public housing facility" in the statute, nor was it defined in *1213 case law or other statutes. The Court stated the general principle that courts should resolve all constitutional challenges in favor of a statute's validity. However, if there is doubt about a statute in a vagueness challenge, the court should resolve the doubt in favor of the citizen and against the state.
In the instant case, like Brown, the statute itself does not define the term "convenience business." Nor do any modern dictionaries or thesauruses I have consulted mention or define a "convenience business." The majority opinion equates the term with "convenience store," which is a term one does hear in the common vernacular. But a "convenience store" is a very different concept than a "convenience business."
The vagueness problem posed in this case differs from Brown, because the statute refers the reader to another statute (section 812.171) for definition. But it does not help because, if anything, the definition is too specific and detailed.
812. 171. Definition
As used in this act, the term "convenience business" means any place of business that is primarily engaged in the retail sale of groceries, or both groceries and gasoline, and that is open for business at any time between the hours of 11 p.m. and 5 a.m. The term "convenience business" does not include:
(1) A business that is solely or primarily a restaurant.
(2) A business that always has at least five employees on the premises after 11 p.m. and before 5 a.m.
(3) A business that has at least 10,000 square feet of retail floor space.
The term "convenience business" does not include any business in which the owner or members of his or her family work between the hours of 11 p.m. and 5 a.m.
If a person wanted to avoid violating this statute it would be a throw of the dice, or random luck to correctly identify a "convenience business" from a non-convenience business. In order to do so, one would have to know the hours the business was open, the number of employees it has on the premises after 11 p.m. and before 5 a.m., the square footage of the retail floor space, and whether the owner or members of his or her family work (presumably at the business, although the statute does not say so) some or any (again unclear) hours between 11 p.m. and 5 a.m. Whether these specifics of the definition of "convenience business" are defenses or are elements of the crime,[1] makes no difference (in my view) and has little bearing on the vagueness and due process question.
The constitutional vagueness and strict construction of penal laws doctrines cluster around three kinds of social policies. First, separation of powers, and the primacy of the legislature to write substantive criminal laws without judicial innovation. Second the perceived unfairness of punishing conduct not previously defined as criminal, plus notice and fair warning of what conduct is proscribed. And third, the potential for arbitrary and discriminatory enforcement.[2] The problem with the statute in this case involves the second category, although it is perhaps the least established in case law.
A fundamental concept of due process is fairness.[3] Crimes should be defined in *1214 advance and in such a manner that individuals have fair warning what conduct is forbidden.[4] The question in such cases is whether the ordinary person would have a basis for notice or warning that his or her conduct risked violating a penal law.[5] Statutes must be reasonably clear so that individuals have adequate notice as to the type of conduct regulated or prohibited by statute.[6] Citizens should not have to guess at what the statute prohibits.[7] As the United States Supreme Court said in Village of Hoffman Estates v. Flipside Hoffman Estates, Inc., 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982):
[B]ecause we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly. (emphasis supplied)
In this case, the too specific and subjective definition of the term "convenience business" fails to give "ordinary" persons a fair warning, because of the impossibility of objectively determining whether a business establishment is or is not a "convenience business." As Justice Holmes said in McBoyle v. United States, 283 U.S. 25, 51 S.Ct. 340, 75 L.Ed. 816 (1931): "Fair warning" must be given in language the common world understands, of what the law intends to do if a certain line is passed. To make the warning fair, so far as possible, the line should be clear.
In order for a person to correctly gage whether the line is crossed in this case, that person must have knowledge of extraneous matters beyond common knowledge. An equally constitutionally invalid statute would be one that enhances the crime of robbery, if one robs a person who has a net income in excess of $100,000.00 at the time of the robbery, and who has in his or her pocket, a white handkerchief. Oh, but those factors have nothing to do with the crime of robbery, you say, and of course you are correct,. But the number of hours an owner or family member works during the night shift, has nothing to do with selling or possessing illegal drugs in a protected zone, either. That is why, in my view, this statute is facially unconstitutional when tested by due process concepts.
NOTES
[1] See Baeumel v. State, 26 Fla. 71, 7 So. 371 (1890) and its progeny.
[2] John Calvin Jeffries, Legality, Vagueness and the Construction of Penal Statutes, 71 U.Va. L.Rev. 189 (1985).
[3] Lanzetta v. New Jersey, 306 U.S. 451, 453, 59 S.Ct. 618, 83 L.Ed. 888 (1939).
[4] 21 AmJur.2d Criminal Law § 15.
[5] See Boyce Motor Lines v. United States, 342 U.S. 337, 72 S.Ct. 329, 96 L.Ed. 367 (1952); State v. Mark Marks, P.A., 698 So.2d 533 (Fla.1997); Warren v. State, 572 So.2d 1376 (Fla.1991); State v. Rou, 366 So.2d 385 (Fla. 1978); State v. Winters, 346 So.2d 991 (Fla. 1977).
[6] Ed Ronald Rotudna, John Nowak, Treatise on Constitution Law § 176.8 (3d ed).
[7] Brown v. State, 629 So.2d 841 (Fla.1994).