796 So.2d 610 (2001)
James Lawrence LIGHT, Appellant,
v.
STATE of Florida, Appellee.
Nos. 2D98-1061, 2D00-2554.
District Court of Appeal of Florida, Second District.
September 21, 2001.
*611 James Marion Moorman, Public Defender, and Terri L. Backhus, Special Assistant Public Defender, Bartow, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and William I. Munsey, Jr., Assistant Attorney General, Tampa, for Appellee.
ALTENBERND, Acting Chief Judge.
James Lawrence Light appeals an order denying his motion for postconviction relief *612 based upon ineffective assistance of counsel, and an order denying his motion to correct illegal sentence. We reverse the order denying Mr. Light postconviction relief based upon ineffective assistance of counsel. Under all the circumstances, Mr. Light's trial counsel was ineffective for failing to investigate his case and present relevant evidence. Because there is a reasonable probability that, but for counsel's errors, the result of Mr. Light's trial would have been different, we must order a new trial on the charges of aggravated assault on a law enforcement officer[1] and resisting an officer with violence.[2] Mr. Light is not entitled to a new trial on the charge of public discharge of a firearm.[3] Because we grant Mr. Light a new trial, we need not address the propriety of his sentence.

I. THE ORIGINAL TRIAL
Mr. Light was charged with public discharge of a firearm, aggravated assault on a law enforcement officer, and resisting an officer with violence for events occurring outside a bar on August 29, 1993. The State maintained that Mr. Light had fired a revolver into the air outside the bar and committed aggravated assault on an officer when Mr. Light pointed the revolver at an officer who tried to arrest him. The charge for resisting an officer with violence was also based upon the pointing of the revolver at the officer. Mr. Light was tried along with a codefendant, Urilicus Hammond, who allegedly fired a gun at the arresting officer after the officer arrested Mr. Light. Mr. Light testified at his trial and presented no other evidence in his defense. He was convicted as charged. Mr. Hammond did not testify but presented a witness who testified that she was with Mr. Hammond in a large crowd at the time of the events. She stated that Mr. Hammond did not shoot at the officer. Mr. Hammond was acquitted. Mr. Light was sentenced to twenty-five years' imprisonment as a habitual felony offender. He appealed to this court. We affirmed his conviction but remanded for resentencing. Light v. State, 667 So.2d 437 (Fla. 2d DCA 1996). While resentencing was pending on remand, Mr. Light filed his motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850, alleging in pertinent part that his counsel was ineffective for failing to investigate his case.

II. THE FACTS KNOWN BEFORE TRIAL
Before trial, the attorney representing Mr. Light[4] had discussed the case with his client. He had read the police reports and had deposed at least one of the officers. As a result, he knew that the trial testimony about the episode would reflect the following information.
At approximately 2 a.m., on August 29, 1993, Mr. Light rode his bicycle east on Laura Street in front of a bar in Plant City, Florida. The bar was closing and a crowd, estimated to be between 20 and 200 people, was gathered outside the bar. Two uniformed police officers, Officer Penix and Officer Lowery, were parked outside the bar in a marked patrol car. The officers and the crowd watched as Mr. Light fired a revolver into the air as he *613 rode by. He fired several shots into the air. Mr. Light admitted that he tried to fire all six rounds in his revolver, but did not know how many shots he fired. The officers recognized that they had probable cause to arrest Mr. Light for the misdemeanor of public discharge of a firearm. See §§ 790.15, 901.15(1), Fla. Stat. (1993). They began to pursue Mr. Light in their patrol car to arrest him for this crime.
The officers drove near or along side of Mr. Light's bicycle. Because of Mr. Light's position, they could not see the firearm or the hand with which they believed he was holding the gun. Officer Penix, who was the passenger in the patrol car, drew his own firearm and ordered Mr. Light to stop and drop his weapon. Mr. Light admitted that he refused to comply with both of these orders. As a result, the officers had probable cause to arrest Mr. Light for the misdemeanor of resisting an officer without violence. See §§ 843.02, 901.15(1), Fla. Stat. (1993); Mosley v. State, 739 So.2d 672 (Fla. 4th DCA 1999).
Mr. Light continued bicycling down Laura Street. He apparently traveled east about two short city blocks from the bar down this straight, well-lighted street. Some members of the crowd ran down the street, following the police car. At an intersection, the officers' car collided with Mr. Light's bicycle. The bicycle and rider were knocked to the ground on the south side of the street. The bar and the crowd were also located on this side of the street.
Once Mr. Light was knocked to the ground, Officer Lowery, who was driving the patrol car, could not see Mr. Light because the front fender of the car blocked his view. Officer Penix testified that he immediately attempted to get out of the car with his firearm still in his hand. According to Officer Penix, before he could get out of the car, Mr. Light got up off the pavement, turned toward Officer Penix, and aimed the gun at Officer Penix. Officer Penix fired his weapon, but missed Mr. Light, even though Officer Penix was fully trained in the use of his weapon and the two men were separated by only a few feet. Immediately thereafter, Officer Penix claimed that the patrol car lurched because Officer Lowery slammed on the brakes. Officer Penix was thrown back into his seat. Mr. Light fled on foot. Officer Lowery was unable to see the events surrounding the discharge of his partner's firearm. Thus, the testimony that Mr. Light pointed a gun at Officer Penix was provided exclusively by Officer Penix.
Officer Penix chased Mr. Light as he ran north across Laura Street and then northwest across a vacant lot. Thus, Mr. Light was running in a diagonal line back toward the crowd. After Mr. Light had crossed the street, Officer Lowery, who had heard the gunshot but did not know who had fired it, pulled his weapon and fired upon Mr. Light. Fortunately, he too missed Mr. Light. Mr. Light ran for about another 200 feet before Officer Penix was able to apprehend him without further struggle. As Officer Penix was beginning to walk Mr. Light back to the patrol car, another man allegedly stepped out of the crowd and fired several shots at Officer Penix. Officer Penix claimed that he recognized this man as Urilicus Hammond. Apparently Officer Penix knew Mr. Hammond, and Mr. Hammond, whose nickname was "Albino Red," had distinctive features. Mr. Hammond fled the scene and was not arrested until later. No gun was ever located in connection with this shooting.
After Officer Penix returned to the patrol car with Mr. Light, the officers conducted a search for Mr. Light's revolver. Each officer claimed that the other officer found the gun. It is undisputed that the *614 gun was found on the street near the bicycle. There were six cartridges in the revolver; four were spent and two had misfired.

III. THE DEFENSE THEORY, THE PRETRIAL PREPARATION, AND THE POSTTRIAL INVESTIGATION
Mr. Light was charged with the misdemeanor of public discharge of a firearm, for which he had no viable defense, but which carried a short sentence. Because he had nine prior felonies, however, the charges of aggravated assault on a law enforcement officer and resisting arrest with violence came with the risk of lengthy habitual offender sentences. Both of these charges were dependent upon the evidence that Mr. Light had pointed his revolver at Officer Penix when he got up from the pavement after the collision. Thus, without more evidence, the case was a swearing match between a police officer and a nine-time convicted felon.
After reviewing the preceding evidence prior to trial, competent defense counsel would understand that the defense needed to raise a reasonable doubt about Officer Penix's testimony that Mr. Light pointed a gun at him. It was undisputed that Officer Penix discharged his weapon. Defense counsel needed to establish that Mr. Light did not point the revolver at Officer Penix, and that Officer Penix either fired his weapon accidently when exiting the patrol car due to Officer Lowery's slamming on the brakes, or fired at Mr. Light out of fear in the mistaken belief that Mr. Light possessed the firearm that had actually fallen to the street. This defense could be established, in part, by the nature of the collision, the location of the weapon on the street, and the possibility that Mr. Light knew his weapon contained no live ammunition and he would not point an empty gun at a police officer. In this case, however, none of that evidence conclusively refuted Officer Penix's version of the events. Thus, prior to trial, it was obvious that defense counsel needed to locate additional witnesses to the critical event or develop impeachment evidence pertaining to Officer Penix.
Because Mr. Light had committed only misdemeanors in the presence of these officers prior to the collision, they had no authority to use deadly force except in self-defense or if Mr. Light committed a new felony. See § 776.05(1), (3), Fla. Stat. (1993). Officer Penix's discharge of his weapon constituted deadly force. Thus, he had a motive to testify that Mr. Light had pointed a firearm at him and that he shot at a felon in self-defense. From our review of the record, it appears trial counsel never fully comprehended these critical circumstances. Although he did argue that the officer fired his weapon by accident or out of fear, he never established the officer had no lawful authority to fire the weapon unless the assault with a firearm had occurred.
Any reasonably competent lawyer evaluating this case prior to trial would realize that the crowd might contain witnesses to the critical event, although distance and lighting might limit the value of their testimony. Mr. Light would not necessarily know the names of those witnesses. Counsel admitted that he made no independent effort to find any of the people who were outside the bar that evening. He merely spoke with Mr. Light and Mr. Light's mother, who was not a witness to the incident. Although counsel testified that Mr. Light did not volunteer the names of potential witnesses, counsel did not state whether he ever specifically requested this of Mr. Light.
In addition to the crowd located immediately outside of the bar, one of the police *615 officers and Mr. Light testified that three women were much closer to the intersection where the car and the bike collided. Again, prior to trial a lawyer would expect that these three women might have relevant testimony. Mr. Light's attorney made no effort of any sort to find these women. It is noteworthy that Mr. Light's family is supportive and undoubtedly could have assisted in such an investigation.
After trial, several witnesses in the crowd were located who might have provided helpful testimony for Mr. Light. At the postconviction hearing, three new witnesses came forward, each of whom testified that they were present outside the bar and witnessed the events on August 23, 1993. In addition, Mr. Hammond and the witness who had previously appeared on Mr. Hammond's behalf testified. One of the new witnesses was Lisa Washington. Ms. Washington testified that she was available at the time of trial and would have testified on Mr. Light's behalf, if asked. She had been at the bar on the night of the incident. She claimed that she saw the events at the bar and that she was in a position to observe the events of the collision from a distance of about ten feet. This suggests that she was one of the three women that both Mr. Light and one of the police officers saw that night. Ms. Washington testified that Mr. Light did not point a gun at the officer.
In addition to failing to investigate the availability of witnesses, Mr. Light's trial counsel failed to investigate Officer Penix or his background. Officer Penix had been a police officer in Plant City for only about a year. Before joining the Plant City police force, he had left what would appear to be a better law enforcement job at a larger police department. Despite the unusual change in jobs, Mr. Light's attorney made no effort to obtain the officer's personnel file or other pertinent information about his employment as a police officer. It does not appear that he took any steps to obtain impeachment evidence against this critical witness. The personnel file, which was obtained in the later stages of this postconviction proceeding, contains information that could have provided strong, admissible impeachment evidence. Without detailing the content of that file, it is probable that Officer Penix would have lost his job if the facts in this case reflected that he fired his weapon by accident or at a fleeing misdemeanant.
At the end of the postconviction hearing, the trial court held that Mr. Light's trial counsel was not ineffective. The trial court also held that even if trial counsel was ineffective, based upon the credibility of the witnesses, Mr. Light did not suffer any prejudice.

IV. THE STRICKLAND STANDARD
To state a claim for ineffective assistance of counsel, a defendant must allege deficient performance and prejudice. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Both performance and prejudice present mixed questions of law and fact. Stephens v. State, 748 So.2d 1028, 1033 (Fla.1999). An appellate court must defer to a trial court's factual findings that are supported by competent, substantial evidence, but the legal conclusions are independently reviewed. Stephens, 748 So.2d at 1034. See also Cabrera v. State, 766 So.2d 1131, 1133 (Fla. 2d DCA 2000).
"The benchmark for judging claims of ineffectiveness ... is whether the conduct of counsel `so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" Downs v. State, 453 So.2d 1102, 1106 (Fla.1984) (quoting Strickland, 466 U.S. at 686, 104 S.Ct. 2052). An attorney's performance *616 must be reasonable under the prevailing professional norms, considering all of the circumstances, and viewed from the attorney's perspective at the time of trial. Id. There is a strong presumption of reasonableness that must be overcome, and strategic or tactical decisions by counsel made after a thorough investigation are "virtually unchallengeable." Downs, 453 So.2d at 1108. Nevertheless, "patently unreasonable" decisions, although characterized as tactical, are not immune. Roesch v. State, 627 So.2d 57, 58 n. 3 (Fla. 2d DCA 1993). See also Cabrera, 766 So.2d at 1133-34.
We cannot agree with the trial court's conclusion that Mr. Light's trial counsel was not ineffective for failing to make any efforts to locate potential witnesses.[5] Counsel has a duty to make reasonable investigations or to make a reasonable decision that particular investigations are unnecessary. Strickland, 466 U.S. at 691, 104 S.Ct. 2052. Mr. Light's counsel admittedly conducted no independent investigation of this case to uncover potential witnesses. By placing this nine-time convicted felon on the stand under these circumstances, without other available evidence to buttress his defense, counsel was acting "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690, 104 S.Ct. 2052. See Bryant v. Scott, 28 F.3d 1411 (5th Cir. 1994); Workman v. Tate, 957 F.2d 1339 (6th Cir.1992).
We emphasize that this case does not stand for the proposition that competent counsel must always investigate for witnesses at the scene of a crime or that they must always investigate the background of police officers who will testify against the defendant. In this case, however, the minimal preparation that counsel performed should have caused counsel to realize that additional investigation was likely to be fruitful and was essential to a defense that pitted the testimony of a police officer against a nine-time felon. It may be the exceptional circumstance in which counsel is ineffective for failing to conduct this type of investigation, but counsel in this case did virtually no investigation when the severity of the charges and the nature of the known evidence simply compelled more investigation before a trial.
We also conclude that the trial court erred in finding that Mr. Light was not prejudiced by the errors of his counsel. We defer to the trial court's finding that many of the witnesses testifying at the postconviction hearing did not provide sufficiently detailed, credible evidence to warrant a finding of prejudice under Strickland. Indeed, some of these witnesses contradicted testimony provided at Mr. Light's trial or the testimony of the officers at the postconviction hearing. However, Ms. Washington's testimony, coupled with that of the officers, provided reliable evidence that she was in a position to witness the events involving Mr. Light. Her testimony could easily have created a reasonable doubt in the minds of a jury as to Mr. Light's guilt-particularly a jury that had not accepted Officer Penix's identification of Mr. Hammond as the other perpetrator. Under these circumstances, the ineffectiveness of Mr. Light's counsel has undermined confidence in the outcome of *617 Mr. Light's trial. See Acker v. State, 787 So.2d 77 (Fla. 2d DCA 2001).
We recognize that a trial court's determinations of credibility are afforded great weight by a reviewing court. We believe, however, that the trial judge's capacity to determine the credibility of the witnesses in a postconviction motion is more limited when the trial judge is examining whether the failure to call a particular witness prejudiced the defendant. In this regard, the analysis that a judge must perform in this type of case is similar to the analysis required when a defendant alleges newly discovered evidence. See Jones v. State, 709 So.2d 512 (Fla.1998) (requiring judge considering whether newly discovered evidence is likely to produce acquittal on retrial to consider whether evidence is admissible, weight to be accorded to evidence based upon whether evidence goes to merits of case, whether evidence is cumulative, and materiality and relevance of evidence and any inconsistencies presented by it). That is, the judge is not examining simply whether he or she believes the evidence presented as opposed to contradictory evidence presented at trial, but whether the nature of the evidence is such that a reasonable jury may have believed it. In this regard, the testimony of Ms. Washington was material and highly relevant, it was not cumulative, and in many ways it was consistent with the testimony of the other major witnesses presented at trial.
Because Mr. Light has demonstrated both prongs of Strickland, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, we reverse the order denying Mr. Light postconviction relief. We remand for a new trial on the charges against Mr. Light for aggravated assault on a law enforcement officer and resisting an officer with violence.[6] Because Mr. Light conceded his guilt on the remaining charge of discharging a firearm in public, he is not entitled to relief from that conviction.
Reversed and remanded.
SALCINES and STRINGER, JJ., Concur.
NOTES
[1] See §§ 784.021(1)(a), .07(2)(c), Fla. Stat. (1993).
[2] See § 843.01, Fla. Stat. (1993).
[3] See § 790.15, Fla. Stat. (1993).
[4] Mr. Light's trial counsel was Frank Theodore Johnson. For matters unrelated to this case, Mr. Johnson has been suspended from practice for ninety-one days following a supreme court order dated December 21, 2000. Fla. Bar v. Johnson, 779 So.2d 274 (Fla.2000) (table).
[5] Because we have determined that counsel was ineffective for failing to investigate potential witnesses for the case, we need not decide whether counsel was also ineffective for failing to investigate Officer Penix's personnel file or employment history. In this case, however, defense counsel's failure to do so was a serious omission. He was unable to present existing, potent impeachment evidence against the one witness who could have provided evidence of aggravated assault on a law enforcement officer or resisting arrest with violence.
[6] The only violence alleged to support this charge was the pointing of the gun at Officer Penix. Therefore, this charge is inextricably intertwined with the aggravated assault charge.